MRS. M. M. G. MOODY V. W. L. MOODY III

No. A-4625. Decided January 19, 1955.
(274 S.W. 2d Series 535)

*Wigley, McLeod, Mills & Shirley* and *V. W. McLeod*, all of Galveston, for petitioner.

The Court of Civil Appeals erred in holding that respond-

ent was liable to the petitioner for income taxes paid by her on income for the portion of the year during which they were married, because under the settlement agreement respondent was liable for same. Thompson v. Thompson, 230 S.W. 2d 376; Foulke v. Pardee, 35 Fed. Sup. 734; Bryant v. McMurrey, 246 S.W. 2d 249.

*Williams & Thornton* and *Bryan F. Williams,* all of Galveston for respondents.

In response to petitioner's propositions and on the theory that "taxes are not considered as debts in the ordinary sense of the word," cited the following authorities; Hopkins v. Bacon, 282 U. S. 122, 51 Sup. Ct. 62, 75 L. Ed. 249; Poe v. Seaborn, 282 U. S. 101, 51 Sup. Ct., 58, 75 L. Ed. 239; Hammonds v. Commissioner of Internal Revenue, 106 Fed. 2d 420.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

This suit was instituted by Mrs. M. M. G. Moody against her divorced husband, W. L. Moody III, seeking a recovery of the amount paid by her as Federal income tax on one-half of the community income during the portion of the year 1947 in which the parties were husband and wife. In a trial before the court without a jury upon an agreed statement of facts judgment was rendered that Mrs. Moody take nothing by her suit. That judgment was affirmed by the Court of Civil Appeals, one of the Justices dissenting. 265 S.W. 2d 610.

The parties were married in 1934 and were divorced on May 23, 1947. On May 12, 1947, while the divorce suit was pending they entered into a property-settlement agreement, and the controlling question presented is the proper construction of that agreement. On March 15, 1948, Mrs. Moody filed an income tax return for the calendar year 1947. She listed in that return her half of the community income for the period from January 1, 1947, to May 23, 1947, the date of the divorce, in the amount of $5,168.87, on the basis of information furnished by her husband. In 1950 the community income of the parties for that period was rechecked by the Department of Internal Revenue, and through the disallowance of certain items and the adding of additional income the amount of Mrs. Moodys one-half of the net community income for that period was increased from $5,168.87 to $14,884.20. She paid the additional tax on the increase, and later filed this suit to recover from her former hus-

band the amount paid by her, including that paid on her return on March 15, 1948. In so far as material to this decision, the provisions of the contracts will be briefly summarized.

It was agreed that the community property of the parties should be divided as follows:

"1. Mrs. Moody is to receive the following property free from all community debts existing against said property; (a) $153,-500.00 in cash to be paid immediately upon the entry of a divorce decree. (b) The contents and furnishings of the home. (c) Mrs. Moody is to be paid a guaranteed sum of $150,000.00 from the sale of the homestead within ninety days after the date of the divorce decree. (d) Mrs. Moody is to receive promissory notes executed by Mr. Moody in the principal sum of $315,000.00. (e) Mrs. Moody is to receive seven of the twenty-four shares of stock in the 1019 Corporation and a note executed by the corporation to Mr. Moody is to be assigned to her. The stock and note are to be free from any pledges or liens. Mr. Moody is given an option to purchase the note and stock in ninety days from the divorce decree for $230,000.00 in cash. (f) Mrs. Moody is to receive free from all liens certain stock of Gulf Shore Oil Company, with the option in favor of Mr. Moody to purchase same within ninety days after the divorce decree for $185,000.00. (g) Mrs. Moody is to keep all property now held in her name. (h) 'Mr. Moody is to obtain releases from the following creditors of the community, so that Mrs. Moody and the share of the property that she will receive under this agreement is free from all claims of such creditors' (then follows a list of creditors).

"2. Mrs. Moody agrees that the property above listed constitutes her fair share of the community and that Mr. Moody shall be accountable for no property other than that listed which shall be received by her as a complete discharge of all his obligations to her.

"3. * * *

"4. All indebtedness of any kind or nature, heretofore, or which may hereafter be, incurred by Mrs. Moody including, without limitation, any and all costs (except clerks, sheriffs, judges and reporters fees), expenses and attorney fees incurred in connection with the case herein referred to, shall be the sole liability and responsibility of Mrs. Moody and are herewith expressly assumed by her."

After the decree of divorce was entered the parties executed

an instrument ratifying the property-settlement agreement, and on the same day Mr. Moody executed an assignment to Mrs. Moody of (1) all of the furnishings in their home and (2) all personal property held in her name. It was provided that all of such property should be free from all community debts existing against same as the result of having been incurred as community debts, "and which debts were incurred by the said William L. Moody III."

The provision of the settlement agreement relied on by Mrs. Moody is the first sentence quoted above, reading as follows: "Mrs. Moody is to receive the following property free from all community debts existing against said property." Her position is that the Federal income tax covering one-half of the community income earned during the period from January 1, 1947, to May 23, 1947, was a community debt "existing against said property" on the date of the divorce decree. The trial court and a majority of the Court of Civil Appeals held that, considering the contract as a whole, it did not appear therefrom that the parties intended that Mr. Moody should be liable for any part of the tax upon Mrs. Moody's income for the year 1947. We are unable to find error in that holding. There can be no certain solution of the question. Precedents are of little, if any, value. There is no need to cite authorities applying the elementary rule that the intention of the parties, as gathered from the language of the contract considered as a whole, governs its construction.

While the word "debts" may well be held to include income taxes in some cases, it does not appear to have been used in that sense in this case. Considering the various provisions of the contract relating to liens against the property we find ourselves in agreement with this language taken from the opinion of the Chief Justice of the Court of Civil Appeals: "But the limitation of debts to those 'existing against said property,' indicates to me that the parties contemplated only that class of debts which would, as of the date of their agreement constitute liens or incumbrances against the specified property. It amounted to nothing more than a representation that Mr. Moody was transferring to Mrs. Moody the unencumbered fee simple estate in the properties subject to such alienation or disposition as she might see fit to make. The fact that our internal revenue laws permit director to subject all property owned by the taxpayer to a lien to effect collection, does not impinge upon that representation."

We attach significance to the provision of subsection (h)

118

of the contract listing the community creditors from whom Mr. Moody was to obtain releases. We also think light is shed on the intention of the parties by the language of the assignment executed by Mr. Moody after the divorce decree was entered. The community debts against which Mrs. Moody's property covered by the assignment was to be protected were those "incurred as community debts during the marriage of Mrs. Mary Margaret Moody and her former husband, William L. Moody III, *and which debts were incurred by the said William L. Moody III.*" (Emphasis ours.)

We are further in agreement with the original majority opinion of the Court of Civil Appeals. Paragraph 4 of the agreement copied above does not have reference alone to indebtedness incurred in the divorce proceedings. The obligation of Mrs. Moody was to assume all indebtedness theretofore or thereafter incurred by her. That obligation was unlimited, and while it included costs and expenses incurred in connection with the litigation, it included as well any and all other indebtedness.

Finding no error in the judgment of the Court of Civil Appeals, that judgment is affirmed.

Associate Justice Garwood not sitting.

Opinion delivered January 19, 1955.