**Bob R. HOWERTON, Appellant,**

v.

**H. H. TOMLINSON, Appellee.**

No. 4647.

Court of Civil Appeals of Texas.

Waco.

Oct. 26, 1967.

Rehearing Denied Nov. 16, 1967.

Herbert Crook, Austin, for appellant.

Andrew Campbell, Hamilton, for appellee.

OPINION

McDONALD, Chief Justice.

This is an appeal by plaintiff from a take-nothing judgment in a suit on a written contract.

Plaintiff Howerton is a loan broker. Defendant Tomlinson wanted to borrow $120,000. or more on his nursing home. Plaintiff and defendant entered the following written contract:

"This is your authority to arrange for me and/or Hillcrest Nursing Home, Inc. of Hamilton, Texas, a mortgage loan of $120,000. or whatever amount I may choose to accept, upon the facility I operate as Hillcrest Nursing Home in Hamilton, Texas. Upon delivery to me and acceptance by me of this commitment, I agree to pay you a fee of 2% of the amount of the commitment. Bob R. Howerton agrees to pay all of his expenses in connection with this application.

> (s) H. H. Tomlinson

> (s) Bob R. Howerton."

Plaintiff pleading the contract, alleged he secured a commitment from the Lampasas Savings & Loan Association, to loan defendant $135,000. on the nursing home; that defendant became liable for the 2% fee upon receiving and accepting such commitment; that defendant paid $1250., but refuses to pay a balance due of $1450.

Defendant answered that the agreement was to pay plaintiff the 2% fee when the loan was closed and plaintiff obtained the money; that the loan was not obtained from Lampasas Savings & Loan Association; and plaintiff did not obtain any loan for defendant. Defendant further plead that plaintiff requested the 2% ($2700.) for his services, and stated he had been out expenses of about $1200.; that the parties agreed that if defendant paid plaintiff $1250. in reimbursement of plaintiff's expenses, he would be satisfied; and that defendant gave plaintiff $1250. in full settlement of plaintiff's claim.

The trial court concluded that the written contract was ambiguous, and admitted testimony to explain the true intent of the parties. The trial court found that it was the intent of the parties that a mortgage loan would be secured by plaintiff for defendant, before the 2% fee would be owed by defendant; that plaintiff failed to secure a loan for defendant; that the commitment contemplated by the parties, was an unequivocal commitment to make a loan; and that the commitment made by Lampasas Savings & Loan was withdrawn by them through no fault of defendant. The trial court further found that the payment by defendant to plaintiff of $1250. was in full settlement of the account.

The trial court entered judgment that plaintiff take nothing.

Plaintiff appeals on 30 points, contending:

1) The trial court erred in concluding the contract was ambiguous.

2) There is no evidence that the parties intended the obligation to pay plaintiff was not to arise until after a loan was secured.

3) The court erred in finding the parties' agreement contemplated an unequivocal commitment to make a loan.

4) There is no evidence, or insufficient evidence, that the check for $1250. was in full settlement of the account between plaintiff and defendant.

Plaintiff's 1st contention is that the contract was not ambiguous.

■ Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154, says:

"* * * 'if a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous.' * * * The converse of this is that a contract is ambigu-

ous only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. * * * In other words, if after applying established rules of interpretation to the contract it remains *reasonably* susceptible to more than one meaning it is ambiguous, but if only one reasonable meaning clearly emerges it is not ambiguous."

And in Moody v. Moody, 154 Tex. 114, 274 S.W.2d 535, the court says:

" * * * the intention of the parties, as gathered from the language of the contract considered as a whole, governs its construction."

Plaintiff asserts that the instrument is clear that plaintiff "did not contract to obtain a mortgage loan, but contracted to obtain a commitment."

■ We think the contract ambiguous. It begins: "This is your (plaintiff's) authority to arrange for me a mortgage loan." Then follows: "Upon delivery * * * of *this commitment*, I agree to pay you a 2% fee." Delivery of what commitment? Plaintiff says it is the letter from Lampasas Savings & Loan agreeing to make the loan (which letter was later withdrawn); but we think "*this commitment*" could reasonably refer to "an arranged loan."

Plaintiff did not "arrange a loan." The commitment was withdrawn before time to make the loan arrived.

Applying the rules laid down by our Supreme Court to the contract as a whole, we think it was reasonably susceptible to construction that plaintiff was to "arrange a loan," and not merely produce a letter of commitment (which was later withdrawn). The trial court did not err in holding the contract ambiguous.

■ The trial court admitted evidence as to the true intent of the parties, and found from such evidence, which we think ample, that they intended defendant's obligation to pay plaintiff a fee, was not to arrive until after a loan was secured; and that the parties contemplated an unequivocal commitment to make a loan. And, we think the trial court's finding, that the $1250. paid plaintiff by defendant, was in full settlement of the account, is supported by ample evidence.

All plaintiff's points and contentions are overruled.

Affirmed.

WILSON, Justice (concurring).

In my opinion the contract is not ambiguous. In arranging a loan a necessary step was to obtain a commitment from the lender. It is common business practice, as a matter of common knowledge, to arrange mortgage loans in substantial amounts by binding the lending agency to advance funds. The term "commitment" has a generally accepted meaning in commerce and finance, of which we cannot claim lack of knowledge. The parties simply agreed that plaintiff would undertake to obtain a loan commitment; and that if and when he did, and upon its delivery and acceptance, he would be paid a 2% brokerage commission. Defendant's cause of action, if the commitment is breached, is against the lender.

I concur in affirmance only on findings concerning accord and satisfaction.