**C. H. LANGDEAU, Receiver of Highway Insurance Underwriters, Appellant,**

v.

**Deborah Ann PITTMAN, a Minor et al., Appellees.**

No. 10746.

Court of Civil Appeals of Texas.

Austin.

June 15, 1960.

Rehearing Denied July 13, 1960.

Cecil C. Rotsch, Clay Cotten, John R. Grace, Austin, for appellant.

Byrd & Davis, Austin, for appellees.

HUGHES, Justice.

C. H. Langdeau, Receiver of Highway Insurance Underwriters, has appealed from a judgment directing him to approve claims in favor of Sylvia Rogers for $5,075.50, the Estate of Joan Upchurch for $1,840.50, and Deborah Ann Pittman for $23,159.50, as general and unsecured claims, and di-

recting their pro rata payment if such claims and sums previously paid and other approved claims arising from the occurrence made the basis of this suit, exceed the total liability of Highway for such occurrence.

The occurrence referred to was the collision on June 1, 1957, near Sealy, Texas, on U.S. Highway 90, between a 1955 Oldsmobile owned and operated by Robert Upchurch and a 1956 GMC cattle truck, owned by Cooke Truck Line and Albert Cooke and operated by Alfred White, Jr.

■ Appellees have a cross point to the effect that appellant Receiver has no authority to appeal from an order of the receivership court. We will first dispose of this cross point.

It is our opinion that this point is not well taken.

Appellant is not an ordinary receiver appointed in the specific instances authorized by the first three sections of Art. 2293, Vernon's Ann.Civ.St. or by its Sec. 4, in cases where receivers have been appointed by the usages of a court of equity. In those cases the authority of the receiver to bring and defend actions is under the "control of the court" appointing him. Art. 2297, V.A.C.S.

Appellant is a liquidator appointed by the Board of Insurance Commissioners who became receiver of Highway Insurance Underwriters under the provisions of Sec. 2, of Art. 21.28 of the Texas Insurance Code, V.A.T.S.

Sec. 4(f) of Art. 21.28 of the Code fixes venue of all "action[s] or proceeding[s] instituted after the commencement of delinquency proceedings by or against the insurer or receiver." We find no provision in the Code which qualifies this implied authority of the receiver to bring or defend suits. Such authority is not under "the control of the court", as is true of other receivers.

More specifically we call attention to Sec. 3(e–h) of Art. 21.28 of the Code which relates to third party claims, such as the present action or proceeding. Subsec. (h) provides for the bringing of an action on a rejected claim and that it shall be "subject to the rules of procedure and appeal applicable to civil cases."

There is no prohibition against the right of the receiver to appeal to be found in the statutes, and we have no authority to interpolate the statute to include this restriction. To us, the statutes provide, or at least imply, an unrestricted right of appeal by the receiver.

Appellant has grouped for briefing points one, four, seven, eight and ten and we will consider them jointly.

■ Appellant filed a plea in abatement, also a plea in bar, urging that appellee's claims were prematurely presented because of the "no action" clause in the policy of insurance written by Highway Insurance Underwriters. This clause provides, in effect, that no action shall lie against Highway unless, as a condition precedent thereto (1) the insured shall have fully complied with all terms of the policy (2) nor until the amount of the insured's obligation to pay shall have been finally determined by judgment against the insured after actual trial or by written agreement between the insured, claimant and the insurer.

It is admitted by appellees that neither the judgment nor the agreement required as a condition precedent to bringing suit against Highway directly had been obtained.

We quote Sec. 2(c) and Sec. 3(e) of Art. 21.28 of the Code in their entirety:

2(c) "Rights Fixed. The rights and liabilities of any such insurer and of its creditors, policyholders, members, officers, directors, stockholders, agents, and all other persons interested in its estate, shall, unless otherwise directed by the court, be fixed as of the date of the commencement of the delinquency proceedings, subject,

however, to the provisions of Section 3 with respect to the rights of claimants holding contingent claims, and as otherwise expressly provided in this Article."

3(e) "Third Party Claims. Where a liquidation, rehabilitation or conservation order has been entered in a proceeding against an insurer under this Article, any person who has a cause of action against an insured of such insurer under a liability insurance policy issued by such insurer, shall have the right to file a claim with the receiver, regardless of the fact that such claim may be contingent, and such claim may be approved (1) if it may be reasonably inferred from the proof presented upon such claim that such person would be able to obtain a judgment upon such cause of action against such insured; and (2) if such persons shall furnish suitable proof that no further valid claims against such insurer arising out of his cause of action other than those already presented can be made; and (3) if the total liability of such insurer to all claimants arising out of the same act of its insured shall be no greater than its total liability would be were it not in liquidation, rehabilitation or conservation. No judgment against an insured taken after the date of the commencement of the delinquency proceedings shall be considered in the proceedings as evidence of liability, or of the amount of damages, and no judgment against an insured taken by default or by collusion prior to the commencement of the delinquency proceedings shall be considered as conclusive evidence in the proceeding, either of the liability of such insured to such person upon such cause of action, or of the amount of damages to which such person is therein entitled."

The claims held by appellees are within the classification of "Third Party Claims."

The time for filing all claims is fixed by Sec. 3(a and b) of the Code.

It is apparent that there are conflicting provisions between the policy of insurance and the statutes. There is no certainty that judgment could be obtained within the time prescribed by the statute for filing claims and even if obtained and timely filed it would be worthless under 3(e) above.

We believe that compliance with the "no action" clause of the policy is abrogated under the rule that "Impossibility of performance may excuse nonperformance of a condition precedent, if the existence or occurrence of the condition is not a material part of the exchange for the promissor's performance and the discharge of the promissor would operate as a forfeiture." 17 C.J.S. Contracts § 463, p. 953.

While, perhaps, appellees could have obtained a meaningless, valueless judgment against Highway's insured, this certainly is not the character of judgment contemplated by the "no action" clause. It was legally impossible for appellees to obtain the kind of judgment the parties had in mind after institution of delinquency proceedings against Highway.

This legal impossibility was brought about by the default of Highway. This default consisted of its inability to so manage its affairs as to remain solvent. The effect of this is to excuse nonperformance of the condition precedent. 17 C.J.S. Contracts § 468, p. 969.

We do not regard it as being of any great present materiality that the "no action" clause be performed. Certainly its nonperformance is not commensurate with a discharge of Highway's contractual obligation. The action here, instead of being against the insured, is against the receiver of the insurer. The trial was non-jury. The Trial Judge knew that Highway

was insolvent. There is no claim that the amounts awarded appellees were excessive.

Under these circumstances we hold that performance of the "no action" clause was not of sufficient materiality to justify release of appellant's obligations under the policy of insurance and the resulting forfeiture of appellees' claims.

Appellant, under these same points, questions the sufficiency of the claims filed with him by appellees under Sec. 3(e), supra.

We copy the claim of Sylvia Rogers in full:

"Please read this form carefully and note that you are making the statements under oath.

"Proof of Claim
against
Highway Insurance Underwriters, Austin, Texas
In Receivership

"Before Me, the undersigned notary public, appeared the person whose name is subscribed hereto, who stated on Oath:

"That, on May 21, 1958, Highway Insurance Underwriters, Austin, Texas, after deducting all offsets and counterclaims, was indebted to him as follows:

"Claimant's Name                Sylvia Rogers
                 (Person or firm to whom payment is to be made)

"Address              4608 Avenue H              Austin  Texas
                 (Street or Box No.)              (City)  (State)

"Highway Insurance Underwriters' Policy No. ——
  Policyholder              Albert E. Cooke

"Date of Accident or Loss              June 1, 1957

"Amount Claimed Due *              $5075.50

"Nature of Claim Personal injuries suffered by Sylvia Rogers caused by the negligence of Albert E. Cooke's truck driver.

"With the Exception of the Following, I Alone Am Entitled To File This Claim, No One Else Having Any Interest Therein: (Show the names of any other persons or firms who have an interest in this claim and state what their interest is. If there are no others, write, 'None.'

"That the above account is True and Correct and that no part of the amount claimed due has been paid.

"s/ Sylvia Joan Rogers
Signature of Claimant

"Subscribed and Sworn To Before Me, this the 9th day of August, 1958.

s/ Sarah Shelby
Notary Public in and for
the County of ————
State of Texas

"Mail to:
C. H. Langdeau, Receiver
P. O. Box 13
Austin 61, Texas

"The Receiver is governed by Article 21.28 of the Texas Insurance Code, 1955, in all matters of receivership procedure.

" * See reverse of claim form for required proof of amount claimed.

(Reverse of claim form)

"Instructions

| "Type of Loss | Required Supporting Proof of Amount Claimed due |
|---|---|
| "Comprehensive: Collision: Property Damage: | (1) At least two repair estimates; OR |
| | (2) Receipted repair bill. |
| "Workmen's Compensation; Bodily Injury: | (1) Current narrative medical reports. |
| | (2) Medical expense bills, and |
| | (3) Wage statement and proof of loss of time. |
| "Medical Payments: All Other Claims: | (1) Medical expense bills. |
| | (1) Similar adequate proof. |

(All bills must be itemized)"

---

Attached to this claim was the following affidavit of Miss Rogers:

"State of Texas:
County of Travis:

"Before Me, the undersigned authority, on this day personally appeared Sylvia Rogers, who, after being by me duly sworn upon her oath states that:

"My name is Sylvia Joan Rogers. I live with my mother at 4608 Avenue H in Austin, Texas. I am 20 years old and have had my disabilities removed in Cause No. 107,787 in the 53rd District Court of Travis County, Texas. On June 1, 1957, I was a guest passenger in an automobile owned and driven by Robert Upchurch, which was in collision with a cattle truck owned by Albert G. Cooke when the truck suddenly turned left in front of us without giving a signal. As a result of this collision, I received many cuts on my face and arm, one over my eye required 15 stitches. In addition I had many bruises on my face and forehead. Both of my eyes were swollen shut for about two weeks and my face was swollen and bruised for about three weeks. The cut over my eye left a scar and there are other smaller scars over my face. In addition I had a large cut on the inner side of my left arm which required many stitches and also left a large visible scar, which shows when I wear a sleeveless dress or gown. I had intended taking up professional modeling as a career, but these scars proved such a disadvantage, that I was forced to discontinue these plans.

"s/ Sylvia Joan Rogers

"Sworn To and Subscribed Before Me, the undersigned authority, on this 9th day of August, 1957, to certify which witness my hand and seal of office.

"s/ Sarah Shelby
Notary Public in and for
Travis County, Texas."

Two small medical bills were attached to the claim.

The claim in behalf of the estate of Joan Upchurch and the minor, Deborah Ann Pittman, was made by Ramona Martin, mother of Joan Upchurch, who was the mother of Deborah Ann Pittman, in her capacity as temporary administratrix and guardian, respectively. This claim and

supporting affidavit were similar to the claim and affidavit of Sylvia Rogers, copied above, except that the affidavit of Ramona Martin did not state the cause of the collision between the truck and the Oldsmobile sedan.

We quote the following from appellant's brief and adopt the factual statements therein contained:

"At the pretrial hearing of March 4, 1959, it was developed, without dispute, that neither of the Appellees submitted proof to the Receiver that Robert Upchurch had no valid claims growing out of the collision, and that he had not filed any claim, and that no proof was submitted by Appellees to the Receiver that the other parties involved in the collision, including Cooke and White, did not have valid claims against the Receiver; that Appellees did not furnish the Receiver with copies of any releases executed to Cooke and White; that Appellee, Deborah Ann Pittman never furnished to the Receiver any proof that her suit at La Grange had been dismissed with prejudice; that at the time the two claims were rejected, the extent of the ultimate liability of the Receivership growing out of the collision here involved could not be determined from the proofs submitted to Appellant by Appellees; that there was a possibility that there were other persons who could file valid claims growing out of the collision than those which had already been filed; and that neither Appellee ever filed any proof with the Receiver that the liability of the Receiver, if he approved their claims, would be no greater as a result of the collision than it would have been if Highway as a going concern had not been placed in receivership.

"It was further conclusively proved that, although Upchurch had not then filed a claim with the Receiver, he did have pending in the District Court of Austin County a suit against the insureds Cooke and White for $32,000.00, and also a suit in the 126 District Court of Travis County for a like amount against Appellant in his capacity as Receiver for Highway, each of these suits alleged to have arisen out of the collision in question. Appellant filed and urged his Motion to Consolidate, No. 111,859 (Pittman) with 112,-051 (Sylvia Rogers) and 113,941 (Robert Upchurch) to be tried as one cause, in order to avoid possible total liabilities from being greater than they would have been had Highway not been in liquidation, and in order to avoid the possibility of Appellees obtaining a preference over other claimants with equally assertable claims. The trial Court refused to consolidate No. 113,941 (Upchurch) with the other two consolidated causes, and such cause is still pending and undisposed of. Prior to Highway being placed in receivership, it had paid the sum of $2,150.00 in settlement of the claim of the Mother of Pat Slater. Because of the pendency of the Upchurch suit in Austin County, the insured, Cooke, had filed a contingent claim with the Receiver for $32,000.00. Therefore, it is self-evident that all of those claims for liability, when added to the $30,075.50 and costs adjudged in these consolidated causes, would have exceeded the maximum limits of $50,000.00 liability growing out of the accident, as fixed by the policy.

"Mrs. Dikeman testified that there were other claims that could possibly be filed than those which had already been filed. Apparently she was referring to claims and suits growing out of our death statutes (Articles 4671–4677) and particularly those relatives of a person whose death is wrongfully caused as specified by Article 4675,

"'* * * the surviving husband, wife, children, and parents of the

person whose death has been caused or by either of them for the benefit of all.'

"That statute would have particular application to any living relatives of Joan Upchurch and Pat Slater within the prescribed degrees of relationship. The proof submitted by Deborah Ann Pittman and Sylvia Rogers to the Receiver, and the proof in this consolidated case, did not show what relatives in those degrees were living who could possibly assert such claims with respect to Joan Upchurch and Pat Slater, except this record does reflect that Pat Slater's mother had been settled with, that Bob Upchurch is asserting claims, and that Joan Upchurch's father, Richard A. Martin, had assigned his claim to Deborah Ann Pittman, and that Robert Upchurch had assigned to Deborah Ann Pittman his interest in the estate of Joan Upchurch, deceased, and especially the claim for conscious pain and suffering before her death.

"Mrs. Dikeman further testified that in her opinion it would have been possible for Deborah Ann Pittman and Sylvia Rogers to have presented proof of such existing relatives of the deceased persons by making proper inquiry, but that they had not presented such proof. Undeniably, the proof submitted by the Appellees before the Receiver (Appellant's Exhibits Nos. 10, 11, 12, and 13) did not make any showing as to whether Pat Slater left any surviving wife, children or father, or whether Joan Upchurch had any child other than Deborah Ann Pittman."

Sec. 3(h) of Art. 21.28, V.A.C.S., provides:

"Action on Claims. The receiver shall have the discretion to approve or reject any claim filed against the insurer. Objections to any claim not rejected may be made by any party interested, by filing the objections with the receiver, who shall forthwith present them to the court for determination after notice and hearing. Upon the rejection of each claim either in whole or in part, the receiver shall notify the claimant of such rejection by written notice. Action upon a claim so rejected must be brought in the court in which the delinquency proceeding is pending within three (3) months after service of notice; otherwise, the action of the receiver shall be final and not subject to review. Such action shall be de novo as if originally filed in said court and subject to the rules of procedure and appeal applicable to civil cases."

■ It is our opinion that Sec. 3(e), supra, providing that a receiver "may" approve a claim upon the showing there required and Sec. 3(h), supra, providing that a "receiver shall have the discretion to approve or reject any claim," plainly vests in the receiver purely ministerial or administrative discretion. It is also our opinion that he prudently exercised such discretion in rejecting appellees' claims.

The only reason given by appellant for rejecting the claims was that "the file of Highway Insurance Underwriters fails to disclose any negligence on the part of Albert E. Cooke, or his driver, Alfred White, Jr."

■ The statutes do not require that a receiver state his reasons for rejecting a claim. It would, therefore, seem immaterial that a reason was given or that no reason was given.

Particularly is this true since the trial on appeal is "de novo as if originally filed" in the court in which the delinquency proceeding is pending. Sec. 3(h), supra.

■ Regardless of the sufficiency of the reason assigned by the receiver for rejecting appellees' claims, there were other adequate reasons for such rejection. All of the

potential claims which might be asserted and established against Highway, arising under its policy here involved were not and could not be known at the time these claims were filed. Under these circumstances it was certainly proper for appellant to reject the claims until total liability of Highway had been ascertained. As to appellant, these claims were simply premature and his authority to approve them was not properly invoked.

■ Appellant makes the following statement in his brief under the points now being discussed:

> "By the express terms of the statute itself, the Receiver was wholly shorn of the power to approve the claims of Appellees; and under this record the court likewise is not vested with any power to override and coerce the Receiver's discretionary rejection of the claims, unless it be shown that he acted capriciously, or without substantial evidence to support his action."

We will answer this contention in our discussion of appellants' Point two which is to the effect that the court below should have tried and disposed of this proceeding under the substantial evidence rule.

These contentions of appellant are in face of Sec. 3(h), supra. This section provides that actions on rejected claims "shall be de novo as if originally filed in said court and subject to the rules of procedure and appeal applicable to civil cases."

Language could hardly be plainer. The action filed by appellees under the authority of this statute was a common law action for damages resulting from personal injuries sustained as a result of negligence. The rules of procedure applicable to a trial of such an action are almost stereotyped. They include the determination of controlling fact issues by the court or jury. This action was in no sense a review of or appeal from appellant's order of rejection.

Appellant refers to our opinion in Southern Canal Co. v. State Board of Water Engineers, Tex.Civ.App., 311 S.W.2d 938, 941, affirmed Tex., 318 S.W.2d 619. There we stated:

> "It is not contended by either party that the action of the Board was in any sense judicial. It is conceded by them that the Board in passing on Canal's application was acting in a purely administrative capacity under delegated statutory authority. Motl v. Boyd, 116 Tex. 82, 286 S.W. 458. The administration of laws belongs to the executive branch of government.

> "If Sec. 13, supra, attempts to place upon the courts the duty of administering the water laws here involved then it is not valid insofar as it does so."

Just the opposite is true here. The Legislature here has made no attempt to place upon the courts the duty of administering any law. It has placed upon certain courts the judicial duty of determining a legal controversy, in this instance, the adjudication of a suit for damages for personal injuries based upon negligence. This is no administrative function or duty.

If the Legislature had attempted to make the receiver sole judge and jury of a common law action for damages for negligence, many interesting questions would arise. Since it is clear to us that no such attempt has been made, we will not speculate upon them.

We overrule the contention that this case should have been tried under the substantial evidence rule and that the Trial Court was without power to set aside the rejection of these claims by the receiver in the absence of arbitrary action on his part.

Appellant groups points nine and three for briefing and we will discuss them together.

The collision giving rise to this litigation happened in Austin County; however,

appellees filed suit in Fayette County, the place of residence of insured Alfred E. Cooke, this suit being filed during or prior to the year 1958, and numbered 11,024, in the District Court of such county. Prior to the actual trial, appellee Sylvia Rogers took a nonsuit, and the case proceeded to trial as to the other appellee. Cooke and White, the named defendants therein in such cause, were represented by Honorable Fred K. Newbery of Dallas, Texas. However, he was employed and paid by Highway to conduct said defense, in accordance with the obligation of Highway under its policy issued to Cooke.

Such cause No. 11,024 proceeded to trial on March 17, 1958, and after a full trial on the merits, the cause was submitted to a jury upon a charge embracing forty one special issues.

The jury's answers to such issues being favorable to the insured defendants, Cooke and White, judgment was entered in said cause on March 27, 1958, in favor of defendants and that plaintiffs therein take nothing by their said suit.

Plaintiffs in said cause filed their original motion for new trial, and their amended motion for a new trial. Each of these were filed prior to April 17, 1958. On April 17, 1958, Highway was placed in temporary receivership and on May 27 of said year, the 126th District Court placed Highway in permanent receivership. On May 17, 1958, Mr. Newberry filed in the cause pending in Fayette County his request for permission to withdraw from the representation of the defendants Cooke and White, and on the same date the Court entered its order permitting said attorney to withdraw as attorney of record for defendants. He did not thereafter appear for or represent the defendants in said cause, and had no further connection with it.

Mr. John C. Marburger of La Grange was associated with Mr. Newberry as local counsel in the trial of cause No. 11,024. After the withdrawal of Mr. Newberry,

Mr. Marburger was employed by the original defendants Cooke and White to look after their interest relating to the motion for new trial filed by appellees, but did not at any time purport to represent appellant or his predecessor in office as Receiver for Highway. No copy of the amended motion for new trial was furnished to or received by appellant or anyone connected with the Liquidation Division. However, the Trial Court found:

"On May 8, 1958, the Receiver of Highway Insurance Underwriters was notified by United States mail that a hearing on plaintiffs' amended motion for new trial would be heard in the 22nd District Court of Fayette County, Texas, in La Grange on May 19, 1958.

"Prior to May 19, 1958, and thereafter, it was the custom and practice of the Receiver's office not to furnish counsel to individual insureds in suits such as Cause No. 11,024.

"Pursuant to this custom and practice, Albert Cooke and Alfred White, Jr., were not furnished counsel by the Receiver of Highway Insurance Underwriters on the hearing of plaintiffs' amended motion for new trial in Cause No. 11,024.

"By reason of this custom and practice, the Receiver of Highway Insurance Underwriters did not send an attorney to be present at the hearing on plaintiffs' amended motion for new trial in Cause No. 11,024."

On May 16, 1958, the day before the order authorizing Mr. Newberry to withdraw as counsel for appellees in Cause No. 11,024, there was filed in the County Court of Travis County in Probate Cause No. 18,836, Guardianship of Deborah Ann Pittman, a minor, an application on behalf of her guardian seeking authority for such guardian to enter into an agreement, an unexecuted copy of which was attached to said application, relating to Cause No.

**354**

11,024, and on the same date, the County Judge of Travis County entered his order granting such application, and giving the guardian authority to enter into such proposed agreement.

This agreement reads:

"By this agreement, made by and between Deborah Ann Pittman, a minor, acting by and through her legally appointed guardian, Ramona Martin, the Estate of Joan Upchurch, acting herein by and through Ramona Martin, Temporary Administratrix, and Ramona Martin individually, on the one part, hereinafter called 'Plaintiffs', and Albert Cooke, d/b/a Cooke Truck Lines, and Alfred White, Jr., on the other part, hereinafter called 'Defendants', it is hereby agreed as follows:

"For and in consideration of the sum of $10.00 and other good and valuable consideration, the receipt of which is hereby acknowledged, plaintiffs agree and covenant to take a voluntary non-suit pursuant to Rule 164, T.R.C.P. in Cause No. 11,024, styled 'Deborah Ann Pittman, a Minor, Et Al. v. Cooke Truck Lines, Et. Al., pending in the 22nd District Court of Fayette County, Texas, not to re-file a suit involving the same subject matter against defendants except as might be necessary to pursue the remedy afforded plaintiffs by Art. 21.28 of the Insurance Code of the State of Texas or any other remedy by which plaintiffs might seek recovery of their claim against defendants to the extent that Highway Insurance Underwriters or the Receiver of Highway Insurance Underwriters are liable therefor.

"Plaintiffs further agree that regardless of the outcome of the claim filed by plaintiffs pursuant to Art. 21.28 of the Insurance Code of the State of Texas, or any suit resulting from such claim that plaintiffs shall not, nor shall anyone for them or on their behalf levy or issue execution or any other process including abstract of judgment against any assets, or property of any kind or description of the defendants with the sole exception of the liability insurance policy which defendants had in full force and effect with Highway Insurance Underwriters at the time of the collision involved in Cause No. 11,024 and such sum as may be collectable therefrom.

"Plaintiffs further agree to indemnify and hold harmless the said defendants to the extent of the amount of any judgment which might be rendered in favor of plaintiffs against defendants in excess of what is actually collected from Highway Insurance Underwriters or the Receiver of Highway Insurance Underwriters by reason of the above mentioned insurance policy.

"It is further agreed that this agreement is not to be construed as an admission on the part of said defendants of any liability whatsoever in consequence of the collision involved in the above suit, and is made by defendants without prejudice to deny liability for any sum whatsoever due to plaintiffs by reason of such collision.

"The defendants covenant and agree that they will fully cooperate with Highway Insurance Underwriters, or the Receiver of Highway Insurance Underwriters, in the defense of any suit or claim that plaintiffs may present against defendants, such insurance company or receiver by reason of the above claim. They further agree and covenant that they will fulfill each and every contractual provision contained in such policy of insurance and will be guilty of no act or omission giving a right to said insurance company or receiver to deny liability or coverage by reason of such insurance policy.

"It is further expressly agreed that the plaintiffs reserve the right to pro-

ceed against the defendants, Highway Insurance Underwriters, or the Receiver of Highway Insurance Underwriters for the recovery of full satisfaction of their claim against defendants for damages arising out of the collision and injuries described in Cause No. 11,024 to the extent of such insurance company or receiver's liability therefor."

On May 19, 1958, the District Court of Fayette County granted plaintiffs' amended motion for a new trial in said Cause No. 11,024. The court below, in this case, made the following findings regarding such order granting a new trial:

"Plaintiffs were entitled to a new trial in Cause No. 11,024 by reason of the errors complained of in their amended motion for new trial.

"The judgment entered on March 27, 1958, in favor of defendants Albert Cooke and Alfred White, Jr., was set aside and held for naught by the judge who heard the case and at a time when he had complete jurisdiction over his judgment."

▪ Under these facts appellants contend that the order granting a new trial in the Fayette County case is void under Sec. 4(d) of Art. 21.28, V.A.C.S.; that the judgment in that case favoring the insureds, Cooke and White, is final and res adjudicata as to appellees other than Sylvia Rogers, and that such appellees were estopped by reason of such judgment.

Sec. 4(d), supra, provides:

"(d) Pending Lawsuits. No judgment or order rendered by any court of this State in any action pending by or against the delinquent insurer after the commencement of delinquency proceedings shall be binding upon the receiver unless the receiver shall have been a party to such suit."

Appellant concedes that these points constitute a collateral attack on the order of the District Court of Fayette County granting a new trial in the case there tried. He relies upon Sec. 4(d) to establish the nullity of the new trial order. In our opinion, this section is inapplicable.

Sec. 4(d) is applicable, by its terms, only to actions "pending by or against a delinquent insurer." The delinquent insurer in this case was Highway Insurance Underwriters. It was not a party to the Fayette County suit and under the "no action" clause of its policy of insurance could not be made a party to such suit. The joinder of Highway as a party to the Fayette County suit is also prohibited by Secs. 38(c), 51(b) and 97(f), Texas Rules of Civil Procedure. See also Utilities Ins. Co. v. Montgomery, 134 Tex. 640, 645, 138 S.W. 2d 1062, 1065, where the court stated that indemnity insurance carrier could not "properly be made parties to suits" against the insured.

Appellant, under these points, discusses the agreement made between Cooke and White and the guardian of Deborah Ann Pittman. We find no specific complaint based on this agreement mentioned or referred to in the points under discussion. Appellant does argue that the effect of this agreement is to leave Highway and its Receiver as the only "interested parties" opposing plaintiffs in the Fayette County suit. We believe that we have sufficiently answered this argument above.

With reference to such agreement entered into by Cooke and White we will say that when Highway, repudiated its contractual obligation and withdrew its counsel in the Fayette County case and left Cooke and White to fend for themselves, the Receiver for Highway who refused to take cognizance of such suit, cannot justly complain that Cooke and White acted to protect themselves, without, at least, Highway or the Receiver establishing that what Cooke and White did was prejudicial to them. This, neither the Receiver nor Highway has done.

Points nine and three are overruled.

Points five and six are grouped for briefing and will be so treated by us.

These points, in a different manner, raise, in substance, the same points of law presented by points four and seven, previously discussed and decided by us. They relate to the failure of appellees to comply with the requirements of Sec. 3(e) supra, and their failure to join as parties other persons who might have claims arising from the collision involved in this suit. These points relate specifically to appellant's pleas in abatement directed to appellee, Sylvia Rogers.

We agree with appellant that these points are practically the same as his points four and seven and we refer to and adopt the discussion there made to a disposition of these points, which we overrule.

Points eleven and fourteen are briefed together, and will be disposed of similarly.

These points present the contention that by execution of the agreement, copied above, White and Cooke released Highway of liability under its policy of insurance in their behalf, and that the Trial Court in the Fayette County case erroneously granted a new trial.

Appellate relies upon the rule that in matters involving settlement with the injured person the relations of insurer and insured are mutually fiduciary, each owing the other the correlative duty to exercise good faith and to act fairly. 45 C.J.S. Insurance § 935, p. 1067. Appellant also cites Johnson v. Hardware Mutual Casualty Co., 109 Vt. 481, 1 A.2d 817, 820, from which we quote the following:

"The plaintiff engaged to cooperate with the company if a loss threatened. He was bound to do so honestly and with all good fidelity. The company was equally bound so to handle the Rule Case. It had a right to look after its own interests, but it was bound to have due regard for the plaintiff's interest, as well. If in what it did and refused to do, it acted honestly and according to its best judgment, this suit must fail."

This quotation recognizes the right of either party to "look after its own interests" so long as the rights of the other party are not infringed.

We have previously discussed this agreement and will not reiterate our remarks. The Trial Court found these facts:

"Albert Cooke and Alfred White, Jr., have at all times fully and actively cooperated with Highway Insurance Underwriters and the Receiver of Highway Insurance Underwriters and have been guilty of no acts which would be in violation of the terms and conditions contained in the insurance policy in question.

"Albert Cooke and Alfred White, Jr., have at all times fully complied with all the terms and provisions of the insurance policy with Highway Insurance Underwriters in question and are not guilty of any breach of said contract or violation of any of its terms or conditions."

This record shows that both Mr. White and Mr. Cooke appeared, and that Mr. White testified, in the Fayette County case and that they both appeared and testified in this case for appellant. There is no contention that their testimony was not full, frank and truthful.

All that appellant hangs his claim of noncooperation to is the execution of the above agreement and the granting of a new trial by the Fayette County District Court.

As to the agreement, we have previously stated that it was not executed until Highway, in violation of its contract, abandoned Cooke and White, its insureds. We find no evidence that this agreement was made

in bad faith or that it resulted in a lack of cooperation on the part of either Cooke or White, or that it harmed Highway or appellant.

We will not undertake a discussion of all the reasons assigned by appellant for the assertion that the Fayette County District Court was "wrong" in granting a new trial in that case.

If the Fayette County District Judge was "wrong" in granting the motion for new trial, he had a "right" to be "wrong." By "right" we mean that his action is not subject to our review now nor could it have been reviewed by appeal to any court. Art. 2249, V.A.C.S., Angelina Casualty Co. v. J. Fisher, 319 S.W.2d 387, Beaumont Court of Civil Appeals; Equitable Life Assurance Soc. of the United States v. Murdock, 219 S.W.2d 159, writ ref. N.R.E., El Paso Court of Civil Appeals.

The record in the Fayette County case is not before us. One ground of the motion for new trial was that the verdict of the jury was against the greater weight and preponderance of the evidence. Just how we are to decide that the Fayette County District Judge erred in granting the motion on this ground, if he did, without a statement of facts is not apparent to us, and we fully accept his action in granting the motion and accord to the parties all the resulting effects and consequences.

Point twelve is that according to the greater weight and preponderance of the evidence, Robert Upchurch, the driver of the Oldsmobile car was guilty of negligence which was either the sole proximate cause or a contributing proximate cause of the collision, and which was imputed to his wife, Joan Upchurch, which precluded recovery by her estate or her minor daughter Deborah Ann Pittman.

At appellant's request the Trial Court filed the following additional findings of fact:

"(1) After the truck turned left in front of him Upchurch was unable to apply the brakes in time to avoid colliding with the truck.

"(2) White did not look nor discover that the Upchurch car was passing the Nichols car until after he, White, had begun to turn left across the center line of the highway.

"(3) Just prior to the collision White did not turn on the mechanical light indicator to indicate that he intended to make a left turn, nor did he hold out his arm in such a manner as to indicate that he intended to make a left turn and gave no notice to cars traveling behind that he was about to make a left turn over to the other side of the highway.

"(4) At the time he was about to make the left turn White knew or should have known that it was not safe for him to do so.

"(5) The Upchurch car started to pass the Nichols car before the truck had started making a left turn.

"(6) After starting to make the left turn, White, by the exercise of ordinary care and the use of all the means at his command consistent with safety, could have prevented the Upchurch's car from colliding with the rear end of the truck.

"(7) Immediately after White started to turn left across the center line of the highway he realized or discovered that the Upchurch car was in a perilous position, that Upchurch would probably be unable to extricate himself unless White exercised ordinary care and used all the means at his command consistent with safety to avoid the collision, which circumstances constituted an emergency proximately caused by White's negligence.

"(8) After White realized that the Upchurch car was in an emergency

he did not act as an ordinary prudent person would have acted under the same or similar circumstances.

"(9) After White turned his truck in front of the Upchurch car, Upchurch was confronted with an emergency which arose suddenly and unexpectedly and was not proximately caused by any negligent act or acts on his part.

"(10) This sudden emergency called for immediate action on Upchurch's part without time for deliberation, and after being confronted with the emergency Upchurch did what an ordinary prudent person would have done under the same or similar circumstances."

We will copy as a partial statement the evidence in support of these findings from appellee's brief, the correctness of which appellant does not deny:

"Ann Nichols, a disinterested and impartial witness, testified that on the day in question she was driving her mother's Buick toward Houston with her mother riding in the front seat. After she had crossed the overpass just east of Sealy, she noticed a cattle truck in front of her which was going slower than she was. At this time she was driving about 40 to 45 miles per hour and was closing the gap between them at a moderate speed. She had just driven through a 45 miles per hour speed zone and had not picked up any speed but was slowing down because of the truck.

"She further testified that while the Oldsmobile driven by Robert Upchurch was in the process of passing her the cattle truck suddenly turned left across the highway without giving any warning whatsoever. After the cattle truck turned in front of the Oldsmobile, Robert Upchurch immediately applied his brakes and pulled to the right trying to avoid a collision but hit the right back corner. After the Oldsmobile struck the truck it rolled off onto the grass shoulder and the truck continued across the highway. Robert Upchurch applied his brakes while the Oldsmobile was still on the north or left hand side of the road. She immediately put on her brakes also and skidded to a stop in the south or right hand side of the road a yard or so past a highway sign. After she stopped she got out feeling a little shaky and said to her mother, 'That could have been us.'

"Mrs. Clay Nichols, Ann's mother, testified to substantially the same facts. In addition, she remembered that immediately after her daughter said, 'Mother, that could have been us,' she also said, 'That truck driver did not give any signal.'

"Fine Bedford, a friend of Sylvia Rogers, testified that he went to what the highway patrolman told him was the scene of the accident. There he found a smudge about two feet long and a foot wide which was about three feet east of a highway sign on the south side of the highway. This smudge was about six feet north of the south edge of the highway and looked like a tire had skidded sidewise rather than straight. He also found some skid marks which started in the north lane of the highway back toward Sealy which led almost up to the smudge. He measured the skid marks by stepping them off in 18 steps of about a yard each, or 50 feet. There were four of these skid marks, two beginning before the other two began and angled from the north side of the road over into the south side of the road, stopping about three feet from the smudge. On the other side of the smudge he found four similar tracks bearing to the right, turning sharper and sharper to the right before they finally stopped. He also inspected the Oldsmobile, and the damage done to it started at the left

front corner and proceeded diagonally across the top to the right rear corner. He was positive that the skid marks he measured started in the north lane and appeared to be new.

"Sylvia Rogers testified that about the time Robert Upchurch started to pass the Buick she bent down to light a cigarette. At this time the Oldsmobile was going between 50 and 55 miles per hour. By the time she looked up the truck had completely blocked the road. The Oldsmobile's brakes were applied while they were still on the north or left hand side of the road.

"John Vance testified that the point of collision was on the south side of the highway about three feet south of the center stripe.

"Alfred White, Jr., testified that he had brake trouble that morning on the way to Sealy and that the truck had been heating up even before the fan belt broke. He admitted that before he turned across the highway he noticed that two cars had slowed up behind him. At this time he was traveling about 15 or 20 miles per hour. However, he started a slow, gradual angling turn about 150 yards before he got to the service station. After he had started this turn he looked in the rear view mirror and saw the Oldsmobile in the north or left hand lane passing the other vehicle. This was the first time he knew the Oldsmobile was passing. Although he knew that the Oldsmobile was in a bad spot and realized that it was in danger, nevertheless, he continued to turn to the left. At this time the left front wheel of his truck was barely over the center stripe. He watched the Oldsmobile in his mirror as it passed the other vehicle and at first thought it was going around him on his left side where there was plenty of room. However, he never tried to

turn back to his right or straighten up but kept turning to the left. When the left front wheel of his truck was almost off the north edge of the pavement he saw the Oldsmobile dart behind him. He felt the impact after his left front wheel was off the highway. At the time of the impact he was blocking the north side of the highway and the left trailer wheels were about on the center line. He heard the brakes of the Oldsmobile being applied while it was still out in the north lane in the act of passing. After the impact the Oldsmobile rolled out to the south side of the highway on the right shoulder.

"Though he was already in his turn when he saw that the Oldsmobile was passing, he did not make any effort to turn back to the right or sharpen his turn to the left, but kept going even though the Oldsmobile had more room to pass on the left than it did on the right. The Oldsmobile hit the back of the truck just a little right of center."

We supplement the above statement by quoting from appellant's brief as follows:

"When the truck operator, White, first discovered the approach of the Upchurch Oldsmobile behind him, in his rear view mirror, his left front wheel of the truck was already across (north of) the center stripe on the slab. At the instant of the impact of the Oldsmobile with the trailer, the left front wheel of the tractor was already off (north) of the left or north edge of the slab. He did not discover the approach of either of the two cars from behind him until he had already started his turn. The interval of time between White's discovery of the approach of the Oldsmobile and the instant it struck the trailer was very short. * * *

"The record shows as a matter of law that he was operating a motor vehicle without any currently valid

.operator's license authorizing him to do so, and in violation of the judgment of a court of competent jurisdiction suspending his license, in violation of Article 6687b,˙ Sections 2(a) and 34 and 44 and that on request by State Highway Patrolman John Vance to exhibit his operator's license he displayed the license of his brother Billy Ray Upchurch in violation of Article 6687b, Section 32, subsection 3; * * *.

"* * * the testimony of Miss Nichols was undisputed that both the Buick and the Oldsmobile were already over and at some point east of the overpass before the Oldsmobile passed the Buick, and that Upchurch first applied his brakes when he was in the left lane about a car-length ahead of the Buick. * * *

"The testimony of Alfred White, Jr., is undisputed that his truck was moving at the rate of between 15 and 20 miles per hour immediately before the collision. At 15 miles per hour a vehicle travels 21.9 feet per second, and at 20 miles per hour 29.2 feet per second. If Upchurch's Oldsmobile was making 71 miles per hour as Dr. John A. Focht testified it was doing, then he was traveling 92.3 feet per second, and would have required only a little over 28½ seconds to have traversed the distance from the top over the overpass to the point of collision. * * * It is undisputed that the left front portion of the Oldsmobile engaged in collision only with a two-foot sector of the right rear corner of the trailer. Vance's testimony is also undisputed that the point of impact (marked by a deep gouge in the asphalt made by the rim of the jammed left front wheel of the Oldsmobile) was in the south lane and the gouge was 3 feet south of the center stripe. * * * A scaling of plaintiff's own chart shows that it was 1,152 feet from the end of the railings on the eastern abutment of the overpass (a point some distance farther east than the point at which the camera was placed in taking the photograph) to the point of impact. The testimony of Patrolman Vance is undisputed that over the last 150 feet of that distance Upchurch had skidded all four of the tires on his Oldsmobile right straight down the middle of the south lane. * * * White's testimony was undisputed that there were side shoulders unobstructed on both sides of the slab, and this is confirmed by the photographs. His testimony was also undisputed that there were wide shoulders, and that the Oldsmobile had plenty of room to have passed the truck in safety on either side of the slab, and his testimony that he could not have gotten out of the way of the Oldsmobile by driving his truck straight on down the south lane of the slab. Vance was undisputed in saying that the shoulders on each side of the slab were 7 feet wide and had a foundation of hard rock and a graveled surface."

The failure of Robert Upchurch to have a current driver's or operator's license did not, as a matter of law, make him civilly liable for damages for personal injuries arising from the operation of his car. Miller v. Jones, 270 S.W.2d 303, writ ref. N.R.E., Dallas Court of Civil Appeals. See also Flanigan v. Carswell, 324 S.W.2d 835, Supreme Court, where it was held that the failure of an operator to have a chauffeur's license as required by statute was not, as a matter of law, a proximate cause of a collision between a car driven by such operator and another vehicle.

We overrule point twelve. In our opinion, the findings of the court attacked by appellant are not so against the greater weight and preponderance of the evidence as to be clearly wrong.

Appellant stresses that this was a rear end collision and quotes from 2 Tex.Jur. Supp., p. 161, that "The circumstance that a vehicle has collided with a car or truck ahead tends, no doubt, to a conclusion that the driver of the overtaking or colliding vehicle was responsible for the collision."

We recognize the force of this statement when applied to a rear end collision occurring when both cars are proceeding one behind the other, and there are no complicating circumstances. Here there was a car intervening between the truck and the Oldsmobile. While the Oldsmobile was passing this car, the truck pulled into the passing lane without giving proper signals and without observing the situation behind him.

We are completely satisfied that the assailed findings are not incompatible with the rule above quoted, and that such findings are not inconsistent with the preponderance of the evidence rule.

■ Points thirteen, fifteen, sixteen, seventeen, eighteen and nineteen are grouped by appellant. They complained that certain numbered findings of the Trial Court were without sufficient evidence to support them and that they are against the preponderance of the evidence, and that other requested, but desired findings were supported by the preponderance of the evidence.

We quote from appellant's brief:

"This brief has already extended to greater length than we had hoped we might hold it; and, obviously, if we should here quote verbatim or in substance all of the material here attacked, and quoted, either verbatim or in summary, all of the testimony and evidence having a bearing upon the points, the brief would attain an unreasonable length."

Then there follows about two and a quarter pages of references to pages in the transcript.

Appellant then states:

"We have already given an accurate but in summary form the substance of most, in fact nearly all, of the material evidence bearing upon the contested issues; but in our opinion it will be impossible for the Court to pass upon the issues raised by this group of points, intelligently, in any way except by reviewing, assaying, and weighing in detail all of the evidence taken in the hearing on the merits, all of which is embraced in Volume I of the Statement of Facts. And with confidence we invite and urge the Court to do so, believing that our position on all of the issues raised is sound and established by the greater weight and preponderance of the evidence."

This constitutes appellant's entire statement and argument.

It is our opinion that these points are not briefed in accordance with Rule 418 (c), T.R.C.P. This rule requires "a fair, condensed statement of the facts pertinent to such points" and "such discussion of the facts * * * as may be requisite to maintain the point at issue."

Obviously, the above statement and argument do not comply with this rule. See Missouri-Kansas-Texas R. Co. v. McFerrin, 156 Tex. 69, 291 S.W.2d 931.

The points above enumerated are overruled.

■ Point twenty asserts that the failure of Sylvia Rogers to warn Robert Upchurch, the driver of the car in which she was riding, to drive more carefully, or to leave his car, and her failure to observe and warn him about the presence of the truck, should preclude her from recovery.

We quote from appellant's statement under this point and adopt his factual statements:

"For the evidence bearing upon the care, or want of care, exercised by

Sylvia Rogers for her own safety, we are compelled to refer only to the testimony of Sylvia Rogers herself.

"She testified that she had known Robert H. Upchurch four or five years before he married Joan Pittman; that she had gone out with him socially quite a good deal during those five years; she 'had been out with Bob many times during the 4 or 5 years she had known him; she had many times been driving with him outside the city limits of Austin; she professed to have had no knowledge of his bad record of reckless driving, as reflected by the Driver's License Division records in the Department of Public Safety, except that she had been told that he had received one 'ticket' for a moving traffic offense the nature of which she professed not to have known.

"She estimated the speed being made by the Upchurch Oldsmobile immediately before the collision to have been between 50 and 55 miles per hour; she said that after they went over the overpass west of the scene of collision she was bent over in the front seat lighting a cigarette; that when she looked back up they were in the left (north) lane passing the Nichols' Buick, and it was only then that she discovered the presence of the truck ahead of them, and that it was then 'all over the road'; that Upchurch then, being in the left lane, applied his brakes and swerved sharply over to his right into the right lane, which had the effect of throwing her weight over to her left; she placed the seal of entire approval upon Upchurch's driving, both prior to and at the time of the fatal collision, saying that he had never done and did not on that occasion do anything which in her opinion was improper or reckless or dangerous. She knew he was driving with dark-colored sun glasses."

Miss Rogers testified that six cans of beer had been purchased at La Grange and that Joan and Robert Upchurch had one can between them which was half full at the time of the collision.

Miss Rogers also testified:

"Q. I don't suppose that Mr. Upchurch ever got a ticket while you were riding with him on some of the occasions that you were out with him, did he? A. No, he didn't.

"Q. Did you ever observe him run any red lights? A. I never observed him breaking any kind of traffic regulations.

"Q. You never did observe him breaking the speed limits at all? A. No, sir.

"Q. He always drove thirty miles in a thirty-mile zone? A. That is right.

"Q. And twenty miles in a twenty-mile zone? A. Yes, sir.

"Q. He always obeyed the law, so far as you know? A. So far as any time I was in the car with him, he did.

"Q. On this occasion on the trip down there, did he ever at any time go more than sixty miles an hour? A. Not that I recall.

"Q. And you watched the speedometer fairly well, did you? A. I didn't watch the speedometer, but I have been driving long enough to know when someone is going over sixty.

"Q. You can tell if they are over sixty, and whether it be sixty-one or sixty-five, you can tell within those limits when they get beyond sixty miles an hour without looking at the speedometer? A. Well, you can tell when someone is speeding."

Also from the testimony of Ann Nichols, who drove the middle car, appellant at-

tempts to locate the position of the cars and the distance between them just prior to the collision. From this appellant argues that if Miss Rogers had been keeping a proper lookout she would have observed the truck and should have exclaimed: "Bob, for goodness sake, take to the shoulder and go around the right of that truck before you smash into the rear end of it!" or when "it became certain that Upchurch was going to smash into the rear of the truck, there was nothing to have prevented Sylvia Rogers from taking hold of the steering wheel and pulling it that extra two feet farther to the south, needed to avert the crash * * ."

Miss Nichols "estimates" or "guesses" about the location of the cars were too vague to be of controlling significance. Then, too, this character of evidence is necessarily inexact. Time is short and the movements are swift when these events occur. The excitement of the occasion prevents sound evaluation of what has transpired.

We believe that it is the peculiar province of the fact finder to weigh testimony of this nature and to determine whether Miss Rogers should have adopted either course of action suggested by appellant.

Point twenty is overruled.

The twenty first and last point is that the judgment rendered is not in accordance with the pleadings.

Appellees prayed for a money judgment. The judgment rendered was that appellant approve the claims in the amounts stated, such claims "to share in the assets of the receivership estate as a general unsecured creditor", and providing against the allowance of claims over the limits of liability of Highway under the policy here involved.

It is our opinion that this is a proper judgment. It is less, not more, than appellees sought by their prayer. It is restricted to the limits of the policy and to a pro rata portion of the assets of Highway in the hands of the receiver.

Point twenty one is overruled.

Finding no reversible error, we affirm the judgment of the Trial Court.

Affirmed.