### MORAN et al. v. WOTOLA ROYALTY CORPORATION.

#### No. 13842.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 9, 1938.

Rehearing Denied Jan. 13, 1939.

W. E. Fitzgerald, of Wichita Falls, for appellants.

John Davenport and J. R. Wilson, both of Wichita Falls, for appellee.

BROWN, Justice.

We adopt the statement of the nature and result of the suit as made by appellants.

On the 26th day of July, A. D. 1933, J. J. Moran and the Wotola Royalty Corporation, being the joint owners in the ratio of one-half each of a certain producing leashold estate, entered into the following contract:

"State of Texas, County of Wichita

"Know all men by these presents:

"Whereas, Wotola Royalty·Corporation and J. J. Moran are each the owner of an undivided one-half of the lease estate in and to the following described tract of land:

\* \* \* \* \* \*

"And, Whereas, there are now upon said lease four producing wells equipped and producing oil; and,

"Whereas, it has been the custom and understanding that J. J. Moran has the management and operation of said lease and has had same since the same has produced oil, but that same has never been reduced to writing:

"It is, therefore, the understanding and agreement between the parties hereto, that is, between the Wotola Royalty Corporation and J. J. Moran, that J. J. Moran is to ·have the complete management, control and operation of said wells as· he has exercised since same have been producing and that for looking after the same he is to receive Five ($5.00) Dollars, per

month, per well, and if and when there are any other wells drilled he shall receive a like amount for each well.

"It is further agreed and understood that this contract is to be permanent as long as said parties are joint owners of said lease and J. J. Moran is to have management of the operation and development of said lease during the life of joint ownership.

"It is further agreed and understood that if other wells are drilled on said lease that the said J. J. Moran shall have the option of drilling same at the prevailing prices.

"In testimony whereof, witness our hands this 26th day of July, A. D. 1933.

"Wotola Royalty Corporation
"By: (signed)   B. L. Fain,
                President.
"Attest:
"(signed)   Mrs. Maude Rainwater,
            Asst. Secretary.
"_____
                "J. J. Moran."

For approximately three and one-half years, J. J. Moran supervised and looked after the leasehold estate for said joint ownership, which period extended up to the time of his death, February 5, 1937. J. J. Moran died intestate, leaving his wife, Ellen Moran, and seven boys and one girl, all of whom were of age except Robert Moran, who had his disabilities removed so that the surviving wife and the children might keep the estate all together and conduct the business as it had been conducted by the deceased father, and forego any partition of the estate. There were no debts due by said estate and no necessity existed for administration. The mother and surviving wife of J. J. Moran and children entered into the following agreement on the 26th day of June, A. D. 1937: "State of Texas, County of Wichita.

"This memorandum of Agreement, this day made and entered into by and between Mrs. Elizabeth Ellen Moran, Ethel D. Moran, J. A. Moran, C. F. Moran, Clarence Moran, Edward W. Moran, Joseph Moran, Robert Moran and John W. Moran, being all of the heirs and only heirs at law of J. J. Moran, deceased, and being the same parties that constitute the business style and name known as J. J. Moran Trust of Wichita County, Texas, and hereby designate Clarence Moran to look after and conduct the joint adventure and oil and gas business, and carry out the terms and conditions of a certain contract entered into on July 26, 1933, between J. J. Moran, deceased, and Wotola Royalty Corporation.

"Therefore, it is agreed by all parties hereto that Clarence Moran is hereby designated to supervise and look after the lease owned jointly by the said J. J. Moran Trust and the Wotola Royalty Corporation, and which was formerly looked after and supervised by J. J. Moran, deceased, the purpose and intention of this agreement being that the said Clarence Moran, who is an experienced oil operator, is hereby designated to act for us and in our stead in said joint enterprise, and to do the character of work that was being done by J. J. Moran at the time of his death, and to carry out the terms and conditions of said contract, with full power and authority to act for us and in our stead, we hereby ratifying and confirming all of his acts in the faithful performance of the obligations and duties with reference to the joint enterprise covering the following leasehold estate, located in Young County, Texas, being described as follows:

*   *   *   *   *   *

"Witness our hands, this the 26th day of June, A. D. 1937.
            "Clarence Moran
            "Mrs. E. E. Moran
            "J. A. Moran
            "C. F. Moran
            "Joseph Moran
            "Edward W. Moran
            "Robert Moran
            "Ethel D. Moran
            "John W. Moran."

During the lifetime of J. J. Moran, and covering the period that he supervised the leasehold estate mentioned in the first contract above set out, Edward W. Moran kept the books, prepared the monthly, or semi-monthly statement, of the expense incident to the operation of said leasehold estate, and furnished copies thereof to the defendant, Wotola Royalty Corporation, upon which statements the said Wotola Royalty Corporation would remit its one-half, or pro rata part, of the expense incident to the operation of said leasehold estate.

After the death of J. J. Moran, Clarence Moran, a competent and qualified supervisor of leasehold estates, took charge of the lease in question and supervised and operated it as his father had been doing

during his lifetime; Edward Moran kept the books and the expenses, and mailed statements of the same to the Wotola Royalty Corporation, as he had been doing during his 'father's lifetime, and the Wotola Royalty Corporation paid said bills for some three months on semi-monthly statements. These statements included $5, per well, for supervision by Clarence Moran, the amount being the same amount that was allowed J. J. Moran, deceased, for the same character of work during his lifetime. At the end of this two or three months' period, the Wotola Royalty Corporation refused to pay anything for supervision, except, however, the $10 to Edward Moran, and issued its checks in accordance and asked for a receipt in full. The Moran Trust refused to accept said checks as payment in full, and instituted suit on the 9th day of November, 1937, to recover the amount of expenses, as per the statements furnished, covering the period up to the time of the trial, setting out the contract first above described, and the agreement between the Morans, creating said trust estate, and the supervision by Clarence Moran of the leasehold estate and his right to supervise the same under the contract.

The defendant, Wotola Royalty Corporation, answered by general demurrer, general denial and special plea, admitting the execution of the contract relied on by plaintiffs, but alleging that since the death of Moran there was no necessity for supervision, and, second, that the contract had terminated on the death of J. J. Moran, and that no new contract had been entered into.

The plaintiff filed a supplemental petition, bringing the account up to the date of the trial of said cause, at that time aggregating $2,550.66. The court, after hearing the pleadings and testimony, rendered judgment for the plaintiffs for the amount of expenses prayed for in their petition, save and except the expenses incident to the supervision of said lease, amounting to $5 per well, per month, and holding that the contract terminated upon the death of J. J. Moran, and also decreeing that the plaintiffs pay all costs of suit.

The plaintiff excepted to the judgment of the court and gave notice of appeal, and thereafter perfected said appeal in due time, and in proper manner, and here now asks for a reversal and rendition of said cause by this court.

The issue raised before us is whether or not the contract with Moran is one that passed to his heirs after his death, and the contention made is that it is a mining contract, the rights under which passed to the heirs of the deceased Moran.

Appellants do not rely upon a quantum meruit for recovery but predicate their right to recover for the supervision of the wells solely on the written contract between Moran and appellee.

That the mining contract, or partnership, is a continuing one, we do not question, but we do not believe that the right of employment for supervision is a continuing contract, or that it became vested in the heirs of Moran at his death.

The cases cited by appellants have no application here, because they do not deal with the character of contract that is before us.

In the case of Neyland v. Brammer, Tex. Civ.App., 73 S.W.2d 884, cited by appellants, the court said [page 888]: "An executrix is bound by the contract of her decedent, which does not require a personal performance of the decedent."

Again, in Wilcox v. Alexander, Tex.Civ. App., 32 S.W. 561, also cited, it is said: "It is the general rule that the death of a party to a contract does not extinguish the contract if it is capable of being fulfilled by his representatives, and is not of a personal nature."

In our opinion, the contract before us, insofar as it deals with "the complete management, control and operation" of the wells, on the lease jointly owned by Moran and appellee, and the payment to Moran of $5 per month for each well "for looking after the same", is a contract of a personal nature and required personal performance by Moran.

Such a contract right does not vest in the heirs of a decedent who was employed to render services of a purely personal nature. See Vol. 10, Tex.Jur., par. 253, page 438.

This was a contract for personal services that could not have been assigned by Moran, without the consent of appellee.

See Vol. 5, Tex.Jur., par. 10, pp. 11–13; Vol. 13, Corpus Juris, par. 719, p. 644.

The judgment of the trial court is affirmed.