Juanita SALTER, Appellant,

v.

Harry M. JONES, Appellee.

No. 5457.

Court of Civil Appeals of Texas.

El Paso.

May 31, 1961.

Wm. Andress, Jr., Dallas, for appellant.

Brundidge, Fountain, Elliott & Bateman, Dallas, for appellee.

LANGDON, Chief Justice.

This is a suit brought by Harry M. Jones, appellee, against his employer, Juanita Salter, appellant herein. Appellee sought to recover the sum of $2,500.00 paid by him to his employer under the terms of a written contract of employment. The contract specified that the $2,500.00 would be returned to appellee if his employer released him "for any reason", but in the event the employee (appellee) himself "terminated" his employment, the $2,500.00 was to be kept and retained by the employer.

The contract was dated March 7, 1959, and appellee commenced working for appellant on March 9th. He continued working until he was stricken by a heart attack about July 17th. He was confined to a hospital for seven or eight days immediately following the heart attack, and thereafter continued under the care and treatment of a doctor at his home, until August 21, 1959, when he was told by his doctor that he could return to work.

During appellee's illness, appellant sent him a "get-well card" and paid him his reg-

ular salary for the last half of the month of July. It is undisputed that appellee, as an employee, failed to produce the volume of business expected of him by appellant during the months from March 9th until his heart attack on July 17th, and that he was never able to produce the quota of $1,500.00 per month set for his department in the contract itself. It is also undisputed that appellee suffered the heart attack and was unable to do any work at all from the date of his heart attack until he was released by his doctor on August 21st.

In the trial below, appellant contended that appellee breached the contract by his failure to meet the monthly quota of $1,500.00 set for his department, and that he terminated the contract himself on July 17th, after suffering the heart attack, by reason of his failure to perform the personal services called for in his contract of employment.

Trial was to the court without the intervention of a jury. After a hearing, the trial court found that appellee substantially performed his contract of employment; that appellee's failure to produce his monthly "quota" called for in the contract did not constitute a breach of said contract, and the fact that appellee was prevented by his illness from performing his duties under the contract of employment from July 17th to August 22nd, 1959, was not sufficient to constitute a termination by appellee of his own employment under the contract. The trial court also found that neither of the parties to the contract considered such illness, and the resulting inability of appellee to perform his duties during such illness, as a termination by plaintiff (appellee) of said contract. The trial court rendered judgment in favor of the employee, and the employer has appealed.

Appellant has predicated her appeal upon two points:

(1) Subsequent impossibility of performance of a personal service contract because of illness does not excuse

performance, and is termination of the contract by appellee;

(2) Appellee, having terminated the contract by a material breach, cannot maintain an action thereon.

The contract, omitting formal parts thereof, is brief, and is set out as follows:

## "1.

"First Party employs Second Party based on a salary of Five Hundred Fifty Dollars ($550.00) per month, which employment may be terminated at any time. It is understood that a quota in the amount of Fifteen Hundred Dollars ($1,500.00) cash receipts per month is placed upon Second Party's Department. It is further agreed that any receipts in excess of $1,500.00 per month, Second Party is to receive Sixty Per Cent (60%) of said receipts.

## "2.

"It is agreed that Second Party will herewith, upon signing of this Agreement, give First Party Twenty-Five Hundred Dollars ($2,500.00) under the following terms:

"(1) To be returned if First Party release Second Party for any reason during or at the end of any month.

"2) Money to be kept by First Party if Second Party terminates his employment for any reason.

## "3.

"It is further agreed that Four Per Cent (4%) of the gross receipts of the Salter Employment Service office, in which Second Party is employed, will be paid Second Party each month start-
I /s/HMJ
ing April 7/, 1959 until this contract is
/s/IS
terminated by either party.

"4.

"If Party of the second part remains in the employ of Party of the First Part at and when Slater Employment Service opens offices in the Southland Center, said Second Party may operate his department in the offices of Salter Employment Service located at the Southland Center.

"Executed This 7th Day of March, A.D. 1959.

"/s/ Juanita Salter
"/s/ H. M. Jones

"5. *Party of first part agrees to pay party of second part 4% annual interest payable on a monthly basis of $2,-500.00—payment by second party—while employed by party of the first part.*

"3/7/59 /s/ Juanita Salter
"3/7/59 /s/ H. M. Jones."

In construing the above contract and the rights of the parties thereunder, the court must necessarily look to the intention of the parties as evidenced by what they wrote in the contract. Under the contract as written, if appellee terminated his employment, he would lose or forfeit his $2,500.00 deposit. If his employment were terminated by the employer, then he would be entitled to the return of the deposit.

We do not believe the parties contemplated that an involuntary, temporary inability to perform on account of sickness would be considered such a "termination" as to cause appellee to lose or forfeit his $2,500.00.

This was unquestionably a contract for personal services to be performed by appellee, and appellee alone. Under the contract appellee had no authority to delegate his duties to someone else, and appellant had the right to look to him alone for the performance of the contract.

■ Where a contract calls for performance of an act or deed which need not be performed in person, sickness will not excuse a failure to perform. On the other hand, the law presumes that the parties to a contract for personal services contemplate the continuance of the ability of the person whose skilled services are the subject of the contract, as one of the conditions of the contract.

"Contracts for personal services are therefore subject to the implied condition that the person shall be able at the time appointed to perform them; and if without fault on the part of the covenantor he becomes disabled the obligation to perform becomes extinguished. A contract for the performance of personal manual labor, requiring health and strength, must be understood to be subject to the implied conditions that health and strength remain." (Am.Jur. 952–3, Contracts, ¶376, Sickness.)

■ Death of a party ends a contract for personal services. Moran v. Wotola Royalty Corp., Tex.Civ.App., 123 S.W.2d 692 (wr. ref.); Northern Irr. Co. v. Dodd, Tex. Civ.App., 162 S.W. 946 (wr. ref.); Gray v. Taylor, Tex.Civ.App., 138 S.W.2d 891.

■ As an excuse for non-performance of a contract for personal services, sickness is similar in its effect to death.

We overrule appellant's first point.

■ The trial court found as a fact that appellee had substantially performed his contract of employment, and that appellee had not breached the contract by reason of his failure to meet the monthly quota set for his department prior to his illness. The contract itself nowhere provides that appellee's failure to meet the quota set for his department would constitute a breach. Neither did such "quota" provision constitute a condition precedent to appellant's liability to pay appellee the amount of monthly compensation agreed upon by the parties. It did, however, constitute a goal for appellee to shoot at, and provided an incentive for the employee to exceed the quota, in order

to become entitled to additional compensation as provided by the contract.

We believe that the trial court was correct in holding that the contract was not breached by reason of the failure of the employee to meet the quota, particularly since appellant herself failed to treat such failure on the part of appellee as a breach, but, on the contrary, continued to pay appellee for his work. Appellant made no complaint with respect to appellee's failure to meet his quota, until August 22nd when, following a recovery from his heart attack, he offered to return to his duties. Appellant's Point 2 is accordingly overruled.

The judgment of the trial court is affirmed.