Comer WHITAKER, Appellant,

v.

R. E. WILSON et al., Appellees.

No. 13887.

Court of Civil Appeals of Texas.

Houston.

Sept. 21, 1961.

Rehearing Denied Oct. 12, 1961.

754 ■

Liddell, Austin, Dawson & Sapp, Charles R. Vickery, Jr., Houston, for appellant.

Bracewell, Reynolds & Patterson, Carlton Wilde, Houston, for appellees.

WERLEIN, Justice.

Plaintiff, R. E. Wilson, an employee of the City of Pasadena, sued appellant, Comer Whitaker, individually and as Mayor of the City, joining the City of Pasadena as a party, to restrain appellant from interfering with him in the exercise of his duties as Water and Sewer Inspector of the City. Appellees, who are duly elected and qualified Commissioners of the City of Pasadena, intervened in the suit on behalf of themselves and the City, and adopted plaintiff's pleadings. They pray for a declaratory judgment determining the respective duties and powers of the Mayor of the City and the City Commission, and for a temporary injunction restraining certain acts of the Mayor, with prayer that it be made permanent upon final hearing.

The trial court denied plaintiff injunctive relief on the ground that his proper remedy was mandamus. We are not concerned here with the appeal taken by plaintiff. The court, on May 29, 1961, after notice of the hearing, granted appellees a temporary injunction upon their verified petition in intervention, the appellant not having filed an answer, restraining appellant from any of the following acts:

"(1) Discharging city employees or in any manner interferring with their performance of their respective duties without approval of the City Commission.

"(2) Interferring, other than by casting dissenting votes, in the administrative supervision and control of the following departments by the City Commission: Water Department, Sewer Department, Street and Bridge Department, Garbage Department, Recreation Department, Park Department, Fire Department, Police Department, Electrical Department, Library Department, Tax Department, Humane Department, Inspection Department, Engineering Department, City Garage Department.

"3 Signing as Mayor and issuing warrants for the payment of claims which have not been audited and allowed by the City Commission.

"(4) Transferring City employees between city departments without the approval of the City Commission, * * *"

Appellant did not perfect an appeal from the order of the court granting the temporary injunction, but thereafter he filed a motion to dissolve such temporary injunction, and now appeals from the court's order overruling his motion.

■ We disagree with appellees that we cannot consider on this appeal from the order of the court refusing to dissolve the injunction, appellant's complaints directed to the order of the court granting the temporary injunction because no appeal was perfected from such order. This suit is now and has been at all times pertinent hereto pending in the Eleventh District Court. The order granting the injunction was granted by the judge presiding over the ancillary docket of the District Courts of Harris County although in such order he designated himself judge of the Eightieth Judicial District Court. Under Rule 330(e), Texas Rules of Civil Procedure, the Judge of any district court in this County is permitted to hear and determine, in whole or in part, causes pending in any other district court of the County, without transfer of the case. In entering orders in a case not pending in his court, it would doubtless be better for the judge to designate himself as presiding judge, as was done by the Judge of the 113th District Court in his order refusing to dissolve the injunction, but the judge's failure to do so does not invalidate the order. In our opinion the whole matter of the propriety of the temporary injunction is before this Court although the appeal is not from the order granting the injunction but from the order refusing to dissolve it. The necessary effect of the order refusing to dissolve is to keep the temporary injunction in force. City of Houston v. Wynne, Tex. Civ.App., 279 S.W. 916, writ ref.; Wynne v. City of Houston, 115 Tex. 255, 281 S.W. 544; Railroad Commission v. Loving, Tex. Civ.App.1939, 128 S.W.2d 845. Moreover, it is immaterial that appellant's assignments of error appear to be directed against the granting of the temporary injunction rather than the order refusing to dissolve it, since upon an appeal from such interlocutory order, assignments of error are not required. Rule 385, Texas Rules of Civil Procedure.

It is the contention of appellant that the lower court erred in temporarily enjoining him from interfering with the administrative supervision and control of the City by the City Commission and from discharging or transferring city employees appointed by him or a former mayor of the City, and interfering with the performance by city employees of their jobs without approval of the City Commission, other than by casting dissenting votes, thereby enjoining appellant from exercising his authority as the City's chief executive officer, and requiring that all executive administrative authority of the City be exercised by the City Commission.

■ We are aware of the rule enunciated by our Supreme Court in Anderson v. Tall Timbers Corporation, 347 S.W.2d 592, to the effect that the trial court is entitled to have the appellate court pass upon the question of abuse of its discretion as of the time the court rules. At the time Judge Johnson granted the temporary injunction he had nothing before him except appellees' verified petition in intervention. Thereafter appellant filed his verified motion to dissolve the temporary injunction, and at the hearing thereon introduced in evidence testimony, and certain letters and instruments, including the charter of the City of Pasadena, all of which, together with the verified petition in intervention and the order of Judge Johnson granting the temporary injunction, were before the trial court and are now a part of the record herein.

At the hearing on the motion to dissolve the temporary injunction, the trial judge stated that he was not going to act as a Court of Civil Appeals, passing on the act of Judge Johnson. He explained that if such precedent was established, the losing party could go before another judge every time a different judge presided over the ancillary docket, and there would be no end of motions to dissolve or modify temporary injunctions. While his position is understandable, it is not in harmony with the present law. It was his duty and responsibility to pass upon the order of Judge Johnson, not as a Court of Civil Appeals, but as a District Judge clothed with authority to do so. He was required to exercise his discretion in determining whether the temporary injunction should be dissolved or modified. His refusal to exercise such discretion is in itself an abuse of discretion. This Court is now called upon to determine what the trial court initially should have done.

■ The law is well settled in this State that the purpose of the issuance of a temporary injunction is to maintain the status quo in regard to the matter in controversy and not to determine the respective rights of the parties under the cause of action asserted or defenses urged. James v. E. Weinstein & Sons, Tex.Com.App.1929, 12 S.W.2d 959.

The Commission, after announcing the foregoing rule in said case, stated:

"If the effect of the granting of a temporary injunction does more than preserve the status of the property as it had theretofore existed, and accomplishes the whole object of the suit, it would be improper for the court to grant same, as the legitimate purpose of the temporary injunction is merely to preserve the existing condition until a final hearing can be had on the merits."

In determining whether or not the temporary injunction in the instant case merely preserves the status quo or changes it, it is necessary to consider the pleadings and evidence in the case.

Appellees, in their verified petition in intervention, allege that appellant is attempting to usurp all administrative, executive and legislative power and authority for the conduct of city government and is attempting to assume ultra vires power and control of all city departments, including the Police, and that Article IX, Sec. 1, of the Charter of the City provides: "The powers of the municipal government and the administration of the business affairs of the City shall be conducted by a Mayor and four Commissioners, who together, shall be known and designated as the City Commission * * *"

They then allege that since the City Charter was adopted in 1943 the "nonadministrative" business affairs of the City have been performed by various City departments, created by the City Commission, and at the present time there are fifteen such departments, to wit: Water Department, Sewer Department, Street and Bridge Department, Garbage Department, Recreation Department, Park Department, Police Department, Electrical Department, Library Department, Tax Department, Humane Department, Inspection Department, Engineering Department, Fire Department and City Garage Department; that since 1943 and until May 2, 1961, the administrative supervision and responsibility for the conduct of City affairs have been divided, as a matter of practice, among the members of the City Commission; that to effect such division, the then elected Mayor has designated one of the Commissioners as Commissioner or Supervisor of each of the City departments, with authority to run said departments on behalf of the Commission on a day-to-day basis, and that the authority for such practice is Article IX, Sec. 19–A of the City Charter, which reads:

"The administrative duties and responsibilities for conduct of the City affairs may be divided between the members of the City Commission, and

to effect such division, the Mayor shall have the right, power and authority to delegate to each member such duties, powers, rights, privileges and prerogatives over City affairs as he may deem advisable; provided the right and power to legislate or to fix policies for the government or regulation of the City's business shall not be delegated to any member, but shall be retained in and exercised by the Commission."

It is then alleged that prior to May 2, 1961, it was customary for the Mayor to designate Commission-Position No. 1 as "Finance Commissioner," in charge of the Tax Department, Library Department and Humane Department; to designate Commissioner-Position No. 2 as "Fire & Police Commissioner," in charge of the Fire Department, Police Department and Electrical Department; to designate Commissioner-Position No. 3 as "Water and Sewer Commissioner," in charge of the Water Department and Sewer Department; to designate Commissioner-Position No. 4 as "Street and Bridge Commissioner," in charge of the Street and Bridge Department, Garbage Department, Recreation Department and Park Department; and to designate the Mayor in charge of the Inspection Department, Engineering Department and City Garage Department.

The appellees then allege that since appellant was re-elected to the office of Mayor and sworn in as such on April 28, 1961, he has failed to designate intervenors as Commissioners or Supervisors of specific departments and that in the absence of a division of the administrative duties and responsibilities among the members of the City Commission by the Mayor, all administrative duties and responsibilities remain in the City Commission as a whole, pursuant to Article LX, Sec. 1 of the Charter. They further allege that appellant is attempting to exercise all administrative duties and responsibilities for the conduct of the City affairs as shown by the minutes

of the City Commission meeting held May 2, 1961, wherein the appellant stated:

"At this time of the year it is customary for the Mayor to assign out various departments to the respective Councilmen. I have said for some time that I feel that certain changes should be made in our City administration, and in order to increase efficiency and curtail expenses, I am going to retain the administration of all departments under the Mayor's office."

■■ The status quo to be preserved by temporary injunction is the last actual, peaceable, noncontested status which preceded the pending controversy. Transport Company of Texas v. Robertson Transports, 1953, 152 Tex. 551, 261 S.W.2d 549. The status quo in this case was the status that existed prior to May 2, 1961, when appellant undertook to retain and assume control of all the departments of the City and to change the manner in which the City affairs had been divided and conducted for some eighteen years. Thus the order granting the temporary injunction, instead of maintaining the status quo, changes it. Under the record before us, it appears that the order should be modified to permit the appellant as Mayor to continue the supervision and conduct of the three departments customarily assigned to him and to permit each of the Commissioners, but not the Commission as a body, to operate and supervise the departments customarily assigned to them respectively.

Appellees, in their petition in intervention, assert that since the Mayor did not divide the departments among them and himself, the conduct and supervision of all the departments are retained in the Commission. Appellant, on the other hand, contends that Pasadena's "Home Rule" Charter adopts the "general law" form of strong mayor government and places administrative duties and responsibility for the conduct of the City affairs in the Mayor. These contentions have given rise to this action for a declaratory judgment.

They involve serious and somewhat complicated controversies and the construction of charter and statutory provisions and an application thereof in an uncharted field involving legal questions of first impression and unsettled law, which should be determined upon a final hearing on the merits. James v. E. Weinstein & Sons, supra; General Drivers, Warehousemen and Helpers, Local Union 745 v. Dallas County Const. Employers' Ass'n, Tex.Civ.App., 246 S.W.2d 677, error refused, n. r. e.

The status quo with repsect to the recommendation, appointing and approving of appointments of employees, including the appointment of police by the Mayor, appears not to be in dispute. The temporary injunction should maintain and not change the status quo with respect thereto. The record does not disclose what the status quo was with respect to discharging and transferring employees from one department to another. If such status quo cannot be shown as a fact upon a hearing of the motion to dissolve the injunction, no order should be entered with respect thereto since it would be impossible, without knowing the status quo, to determine whether the order would preserve or change it. If upon such hearing the status quo is established as a fact, then the order should preserve it. We think the same rule should apply in regard to the Mayor issuing warrants for the payment of claims which have not been audited and allowed by the City Commission. The order should merely preserve the status quo.

Appellees do not pray in their petition in intervention for an order preserving the status quo with respect to the assignment to them of the departments which they previously supervised and managed, but instead pray that the appellant be enjoined from interfering, other than by casting dissenting votes, in the administrative supervision and control of said departments *by the City Commission.* Without in any way passing upon the merits of the case, it is our view that the temporary injunction as prayed for and granted changes the status quo in that regard. Though not entitled on the temporary injunction hearing to the relief prayed for, appellees are entitled to an order, if prayed for, which will preserve the status quo and permit them to retain the departments previously supervised by them.

The Trial Court on the hearing of the motion to dissolve did not pass upon anything since the Judge did not want to sit in judgment on the order of another district judge. The Trial Court should have determined from the facts in evidence before him what the status quo was at the time the injunction was granted, and modified or changed the order granting the injunction so that the status quo would be preserved until a final hearing can be had on the merits.

The judgment of the Trial Court is reversed and the cause is remanded in order that upon a new hearing on the motion to dissolve or modify the injunction, the Court may take such action, not inconsistent with this opinion, as will preserve the status quo of the parties until a final hearing on the merits.

Reversed and remanded.