Chester ERICKSON, Trustee et al., Appellants,

v.

Jon ROCCO et ux., Appellees.

No. 147.

Court of Civil Appeals of Texas.
Houston (14th Dist.).

Oct. 9, 1968.

Rehearing Denied Nov. 6, 1968.

Willis Witt, Liddell, Dawson, Sapp & Zivley, Houston, for appellants.

Odis Nolte, Nolte & Sherman, Pasadena, for appellees.

TUNKS, Chief Justice.

This is an appeal from a judgment temporarily enjoining the foreclosure of a deed of trust lien. Jon Rocco and his wife, the owners of the property in ques-

tion, were plaintiffs in the trial court and are appellees here. Chester Erickson was the named Trustee in the deed of trust in question and was a defendant in the trial court and is an appellant here. Farm and Home Savings & Loan Association is the holder of the note secured by the deed of trust and intervened in the trial court contesting the plaintiffs' right to injunction. Farm and Home Savings & Loan Association also is an appellant in this court.

In August, 1967, the appellees, Jon Rocco and his wife, were the owners of a home. Their ownership was subject to a deed of trust lien dated February 1, 1961, securing the payment of a purchase money note of the same date in the original principal amount of $11,600.00. About August 12, 1967, the plaintiffs' home burned. From pictures of the house taken after the fire and received in evidence in the trial court, it is apparent that their home was extensively damaged.

Following the fire, the Roccos continued to make the payment on their house note. There is evidence that they made some effort to preserve the remains of the house, placing boards and tarpaulins over some of the doors and windows. They removed some of the rubble from the interior of the house. There is also evidence to the effect that despite the efforts made by the Roccos to preserve the remains of the house, some vandalism occurred. Obscene words were written on some of the interior walls, holes were punched in the wall board of the interior of house and some of the fixtures within the bathroom were carried away. The plaintiffs did not either repair or rebuild their house.

The house was covered by a fire insurance policy at the time that it burned. Soon after the house burned, that insurance policy was cancelled. As of the time of the trial the plaintiffs had not procured another insurance policy covering the value, if any, of the remains. There was testimony, however, that some effort had been made to procure another policy and they had not been able to do so.

In the deed of trust in question the grantors covenanted that they would "keep the said premises in as good order and condition as they are now and will not commit or permit any waste, impairment or deterioration of said premises or any part thereof." They also covenanted that they would "keep the improvements now existing or hereafter erected on said premises" insured against loss by fire. It was required that the fire insurance policy have attached thereto a loss payable clause in favor of the holder of the note. It is the position of the appellants here that the evidence before the trial court conclusively showed such violations of those covenants as to entitle them, as a matter of law, to foreclosure of their lien, so that the trial court was in error in granting the temporary injunction. They rely upon the rule announced in Southland Life Ins. Co. v. Egan (Tex.Com.App.), opinion adopted, 126 Tex. 160, 86 S.W.2d 722. In that case the court said of appellate review of a trial court judgment granting or refusing a temporary injunction, "If the facts are such that solely questions of law are presented, the trial court's action is reviewable and should be reviewed on appeal. Differently stated, the trial court abuses its discretion when it fails or refuses to apply the law to conceded or undisputed facts."

Though the record is not entirely clear on the matter, apparently the loan in question was insured by the Federal Housing Administration. On August 29, 1967, Farm and Home Savings & Loan Association sent to plaintiff a letter enclosing the requirement of the Federal Housing Administration as to the restoration of the house. Those requirements were: "Remove all material damaged by fire, smoke and water. Reframe, rewire, replace roof, and plumbing. * * * Refinish interior and exterior of structure to as good or better condition than prior to damage."

On January 18, 1968, Farm and Home Savings & Loan Association wrote to plaintiffs saying that they were in default "because repairs have not been started."

The letter also said, "If this matter continues, we will have no alternative but to refer this matter to our legal department, so that the Association's interests might be protected under the terms of the Deed of Trust."

The plaintiff, Jon Rocco, denied having received either of those two letters.

On February 28, 1968, a firm of attorneys in Nevada, Missouri, wrote plaintiffs saying that the matter had been placed in their hands and that foreclosure proceedings were being instituted with the sale date set for April 2, 1968. On March 21, 1968, the plaintiffs filed their suit against Chester Erickson, the trustee, asking for an ex parte temporary restraining order, a temporary injunction and, upon final trial, for a permanent injunction, enjoining the threatened foreclosure. The trial judge refused to grant the ex parte restraining order, but set the case down for hearing on the petition for temporary injunction, on March 28, 1968. On the date of that hearing the defendant appeared and filed his answer and Farm and Home Savings & Loan Association intervened asking that the petition for temporary injunction be denied. After hearing the evidence the trial court granted the plaintiffs' petition for temporary injunction. The defendant and the intervenor have perfected their appeal, seeking a reversal of the trial court's judgment and a dissolution of the temporary injunction.

The trial court in its judgment recited that the temporary injunction was granted "for the reason that the plaintiffs have made all monthly installment payments due and owing, on time and in a proper manner and have not committed any acts of waste and that insurance coverage is not available, therefore, a foreclosure would be wrongful and cause irreparable damage." The trial court also filed findings of fact and conclusions of law, reciting, in substance, that plaintiffs' house was so destroyed that it could not be used as a residence; that the insurance was cancelled by the insurer and that plaintiffs, despite repeated efforts, could not get insurance on the remains; that plaintiffs had not made settlement of their claim on their insurance policy; that after the fire the plaintiffs did some cleaning up on the premises and boarded up and placed canvas covering over the windows; that vandals had written obscene words on and punched holes in the walls of one of the bedrooms; that the failure to get insurance was not "a breach of the deed of trust" because it could not be obtained; that the damage to the premises was through no fault of the plaintiff; that the remains were cared for up until the time of the trial and that plaintiffs were entitled to the temporary injunction.

These findings and conclusions have been attacked by 25 points of error in appellants' brief. The essence of their position is that the plaintiffs have breached the covenants in their deed of trust by permitting waste, by failure to repair the house and by failure to procure insurance on the premises, so that they are, as a matter of law, entitled to foreclosure of their lien.

■ The function of a temporary injunction is to preserve the last peaceable status quo of the subject matter of a law suit. The subject matter of this law suit is the plaintiffs' home. The status quo which is sought to be preserved by the temporary injunction is the plaintiffs' ownership in the home. If the injunction had been denied and the foreclosure carried out, that status quo would have been disturbed in that plaintiff would have lost their ownership therein. In order for one to be entitled to a temporary injunction, it is not necessary that he sustain the burden of proving that he will ultimately prevail in the dispute. It is sufficient that he show "a probable right and a probable injury." Ford v. Aetna Ins. Co., (Tex.Sup.Ct.), 424 S.W.2d 612; Sun Oil Co. v. Whitaker, (Tex.Sup.Ct.), 424 S.W.2d 216; Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549.

■ Under Rule 683, Texas Rules of Civil Procedure, the trial court, in granting

a temporary injunction, is required to set forth the reasons for its issuance. In this case the court stated its reasons as noted above. The trial court also filed findings of fact and conclusions of law, though it was not required to do so. Rule 385, T.R.C.P. This court, however, is not limited to either the reasons stated for the issuance of the injunction or the findings of fact and conclusions of law made. In an appeal from a judgment granting or denying a temporary injunction, the Appellate Court is required to review the evidence, and to draw legitimate inferences from the facts in evidence, in the light most favorable to the trial court's judgment. If such a review of the evidence will support any findings of fact that would, in turn, support the trial court's judgment, those findings are implied in the judgment, itself. City of Irving v. Dallas County Flood Control Dist., (Tex.Sup.Ct.), 383 S.W.2d 571. Construction & General Labor Union, Local 688 v. Stephenson, 148 Tex. 434, 225 S.W.2d 958; Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73; Brooks Gas Corp. v. Sinclair Oil & Gas Co., 408 S.W.2d 747 (Tex.Civ.App.), writ ref., n. r. e.

■ In determining the questions presented by this appeal, we are required to construe the contract between the parties as reflected by the language of the deed of trust in question. In such a construction there are certain well established rules that govern. We must examine the language used in the contract for the purpose of determining the intention of the parties to it, Fox v. Thoreson, (Tex.Sup. Ct.), 398 S.W.2d 88. In determining the intention of the parties in use of particular language in particular sections of this contract, we must look to the contract as a whole, being governed by any language in the entire contract which throws a light on the intention of the parties as to particular phrases used. Howerton v. Tomlinson, 421 S.W.2d 494 (Tex.Civ.App.), writ ref., n. r. e.; Fenn v. Estate of Burnett, 405 S.W.2d 161 (Tex.Civ.App.), no writ hist.

■ The first of the covenants which the appellants contend has been breached is the covenant to "keep the said premises in as good order and condition as they now are." It is obvious that the purpose of the covenant in the deed of trust is to preserve the value of the security of the lien holder. But, when considered in connection with the other language of the contract, it is also obvious that the parties did not intend that there be a breach of that covenant when the grantors failed to keep the premises in good order because of a fire which burned the premises. A loss in the value of the security resulting from a fire was provided for in another provision of the contract, that provision requiring the grantors keep the premises insured against loss from fire. If we placed upon that language the literal construction contended for by the appellees, a breach of the covenant occurred the instant the fire started. Such was not the intention of the parties. Rather, it was the intention of the parties that that covenant impose upon the grantors the duty of ordinary maintenance of the house during the term of the indebtedness.

■ The next covenant of which the appellants insist there has been a breach is the covenant not to commit or permit waste, impairment or deterioration of the premises. It is the contention of the appellants that the evidence shows, as a matter of law, that the appellees committed or permitted waste, thereby breaching this covenant in such a manner as to authorize the foreclosure of the lien. The evidence pointed to by appellants in this respect is that which shows that following the fire vandals wrote obscenities on the walls of the bedrooms, removed some of the bathroom fixtures and punched holes in the walls of the bedroom. The evidence also shows that despite the efforts of the appellees to close the doors and windows with boards and tarpaulin the rain could still enter the house and do some damage to it. Despite the occurrence of these events we are of the opinion that the evidence sup-

ports a finding that the appellees did not commit or permit any waste. The term "waste" means damage resulting from some wrongful conduct of one in possession of property. In R. C. Bowen Estate v. Continental Trailways, Inc., 152 Tex. 260, 256 S.W.2d 71, at p. 72, the Court said, "Waste is an injury to the reversionary interest in land caused by the *wrongful* act of a tenant or other party rightfully in possession * * *." (Emphasis added). Again the Court said, "Waste includes injury resulting from failure to exercise reasonable care in preserving the property."

There is ample evidence in this record to support a conclusion that those instances referred to by appellant as constituting waste occurred without any fault on the part of the appellees. Pictures of the property taken after the fire occurred indicate that it would have been practically impossible to so close up the premises that vandals could not enter and that the rain could not get into the house. The trial court specifically concluded, as a matter of law, that "the damages complained of by the defendant were caused by the fire and vandalism and through no fault of the plaintiff." Though we are of the opinion that this was a finding of fact rather than a conclusion of law, we also are of the opinion that the evidence supports such a finding.

▮ The other covenant of which the appellants contend there has been such a breach as to authorize, as a matter of law, the foreclosure of their lien, is that relating to the appellees' duty to maintain insurance coverage on the premises. The trial court recited in its finding of facts that the appellees had made "repeated efforts to procure insurance on the remains of the house and had been unable to do so. Appellants challenge this finding because the evidence does not show that appellees made "repeated" efforts to get insurance. We are inclined to agree with appellants in that analysis of the record, however, we are of the opinion that the record amply sustains the finding by the trial court recit-

ed in its judgment and in its finding of fact to the effect that insurance coverage on the remains of the house after the fire was unavailable. Jon Rocco testified that he had tried to get insurance and had been unsuccessful. There was evidence to support a finding to the effect that nothing of insurable value remained after the fire. The plaintiff, Jon Rocco, testified that his house was destroyed by the fire. The requirements of the Federal Housing Administration as to the replacement of the house which are quoted above show that the damage was extensive. The pictures admitted in evidence show the nature of the damage to be such that it is extremely doubtful that any insurance company would be willing to cover the remains by an ordinary insurance policy. The appellants themselves, in their pleadings, stated that it would take at least $7,500.00 to repair the damage to the house. In view of that evidence we hold that the record sustained the trial court's finding to the effect that insurance was unavailable.

The evidence in this case supports a finding to the effect that the grantor's covenant keep the premises insured against loss by fire, insofar as it applied to their duty to keep insurance coverage on the remains of the building, became impossible to perform. This impossibility was brought about by the fact that the fire destroyed any insurable value in the house. This was an event which occurred after the making of the contract and without any fault on the part of the grantors. There is authority in Texas applying a common law rule to the effect that impossibility of performance will not excuse non-performance unless provision for such excuse is set forth in the contract itself. Masterson v. Amarillo Oil Co., 253 S.W. 908 (Tex.Civ. App.), writ dismd. However, there is substantial authority for the proposition that the harsh common law rule in this respect has been relaxed by the modern decisions. Vol. 17A C.J.S. Contracts §§ 459–478, pp. 594–674; Vol. 17, Am.Jur.2d, pp. 851, 897, Contracts, Secs. 404, 441. Section 457 of

the Restatement of the Law of Contracts is in the following language:

"SUPERVENING IMPOSSIBILITY

"Except as stated in Sec. 455, where, after the formation of a contract facts that a promisor had no reason to anticipate, and for the occurrence of which he is not in contributing fault, render performance of the promise impossible, the duty of the promisor is discharged, unless a contrary intention has been manifested, even though he has already committed a breach by anticipatory repudiation; but where such facts occur after the time when performance of a promise is due, they do not discharge a duty to make compensation for a breach of contract."

There is Texas authority consistent with the quoted language from the Restatement of the Law of Contracts. Salter v. Jones, 348 S.W.2d 381 (Tex.Civ.App.), no writ hist. Langdeau v. Pittman, 337 S.W.2d 343 (Tex.Civ.App.), writ ref., n. r. e.; Senter v. Dixie Motor Coach Corp., 67 S. W.2d 345 (Tex.Civ.App.), affirmed 97 S. W.2d 945 (Tex.Civ.App.). In Northern Irr. Co. v. Watkins, 183 S.W. 431 (Tex. Civ.App.), err. ref., though the court held that there was not, under the facts of the case, such impossibility as to constitute an excuse for nonperformance the court said, at page 436, "Where the law creates a duty or imposes a charge, and the party is disabled to perform it without his fault, and has no remedy, then the law will excuse him, and in such case he will not be held liable in damages for nonperformance.

While it is true that the appellees had not procured any policy of insurance covering possible damage to the remains of the building, yet there was a contract of insurance relating to the premises which is still in effect. The policy which was cancelled after the fire remained effective and binding insofar as damage had occurred to the premises before its cancellation.

It is to be noted that in the correspondence between the appellants and the appellees the appellants had not complained of the failure of appellees to procure a policy of insurance on the remains of the building. Their requests of appellees and the reasons given for instituting the foreclosure proceedings related to the failure of appellees to rebuild the house. It was not until the day of the trial, in the answers filed by appellants, that appellees were given notice that appellants considered them to be in violation of their contract because of their failure to procure another insurance policy. Appellees had to proceed to trial of their petition for temporary injunction without any previous notice that such a contention would be made. This is one of the reasons that the appellate court, in reviewing the trial court's judgment granting a temporary injunction, should liberally construe the evidence in favor of the trial court's judgment. There is authority for the proposition that a lien holder is not entitled to foreclose his lien because of the breach of the covenant to keep premises insured without having given the owners notice of their default in this respect and an opportunity to correct it. Fraser v. Kay, 251 S.W.2d 754 (Tex. Civ.App.), no writ hist.

Under the circumstances we cannot say that the evidence showed as a matter of law such a breach of the covenant to keep the property insured as that the trial court could not, in the exercise of its equitable powers, temporarily enjoin the foreclosure of the lien.

There is no showing here that the granting of the temporary injunction caused any substantial hardship to appellants. In compliance with Rule 684, T.R. C.P., the trial court required the appellees to post a bond in the amount of $1,000.00. The appellants have not questioned the sufficiency of that bond. As noted above Farm and Home Savings & Loan Association is named in the loss payable clause in the insurance policy still in effect insofar as appellees' house was damaged by fire, thus securing the indebtedness owed by ap-

pellees. The appellees have continued to make their monthly installment payments on the debt. If facts should develop pending the final trial which place the appellants' security in jeopardy they may be heard on motion to dissolve the temporary injunction. Whitaker v. Wilson, 349 S.W. 2d 753 (Tex.Civ.App.), writ ref., n. r. e.

On the other hand, the plaintiffs, because of their insurance company's refusal to pay their claim and the intervenor's insistence that they rebuild their house, are likely to lose their lot unless the foreclosure is enjoined.

█ Thus we have a situation calling for application of the rule pronounced in Bellows-MacLay Const. Co. v. MacLay, 98 S.W.2d 213 (Tex.Civ.App.), no writ hist., wherein the court said, at p. 214, "Where the granting or refusing of a temporary injunction will or may result in a material injury to or endanger the rights of one of the parties to a suit and slight or no harm will result to the other party, it is the duty of a court to lend aid to the one where the greater injury or damage would likely result."

The judgment of the trial court is affirmed.

SAM D. JOHNSON, Justice (dissenting).

This dissent is respectfully submitted.

At the outset it should be noted that the trial court, in its order restraining Farm and Home from proceeding with its foreclosure, has concluded that such action would not only cause irreparable damage but also would be *wrongful.* The choice of the word *wrongful* would appear to be most unfortunate, especially when contained in an order restraining the enforcement of a remedy to which Farm and Home was clearly entitled.

The trial court's order concluding that foreclosure would be *wrongful* enumerates three, and only three, grounds: (1) insurance coverage is not available, (2) appel-

lees have not committed any acts of waste, and (3) appellees have made all monthly installment payments due and owing. Let us carefully examine each of these for Rule 683, T.R.C.P., specifically requires that every injunction set forth the reasons for its issuance. Failure to do so is fatal. Rothermel v. Goodrich, 292 S.W.2d 882, (Tex.Civ.App.) no writ hist.; Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549. It is upon these grounds, and these grounds alone, that the court's order must find its support.

When Jon Rocco and wife purchased the property in question they assumed the indebtedness and all of the mortgage obligations. The covenant to provide insurance is clearly contained in the deed of trust. In it the grantors expressly and specifically covenant to keep the improvements insured against loss by fire and other hazards. The covenant continues, "* * * if default shall be made in payment, or part thereof, under the said note, *or if for any reason* (other than the fault of the holder of the note) *the fire or other hazard insurance is cancelled or discontinued,* or if the Grantors shall fail to keep or perform any of the covenants, conditions, or stipulations herein, then the said note * * * shall * * * become due and payable * * *." (Emphasis added). The deed of trust then empowers the trustee in the customary manner to foreclosure and sell the property.

Here the appellee Rocco, himself, testified that after the first policy of insurance was discontinued, that the premises were not then insured, and that the property had not been insured since the original policy was discontinued. In the intervening months that followed and up until the time of the court's hearing *no* policy of insurance has been furnished to Farm and Home.

In addition to the trial court's order reciting that "insurance coverage is not available" its findings of fact stated that "Plaintiffs have made repeated efforts to

secure new insurance coverage, however, these attempts have proved to be unsuccessful." Appellant contends there was no evidence or in the alternative, insufficient evidence to support the trial court's finding that "repeated efforts" were made to obtain insurance coverage.

The *total* testimony appearing in the Statement of Facts and in the record before the Court on this issue was given by the appellee, Jon Rocco, in response to questions from his own attorney. It is as follows:

"Question: Have you tried to get insurance on the burnt house?

"Answer: Yes, sir, we have.

"Question: Have you been successful?

"Answer: No, sir.

"Question: Why not?

"Answer: Well, due to this legal action is one of the reasons and, secondly, they just wouldn't handle it—one guy told us it was totally destroyed and he wouldn't insure it."

Objection was then made, "That's a hearsay statement what somebody told him." The Court responded, "Yes, sustained."

Even had there been no sustained objection to the last question the most that this testimony shows is one unsuccessful attempt to obtain insurance by the appellee. The only reason assigned by the appellee for the unavailability of the insurance is the "legal action" that he himself instituted. With the objection having been sustained there is *no* evidence to support the findings of "repeated efforts" and "unavailability" of insurance. Even ignoring the sustaining of the objection there is insufficient evidence to support the findings of "repeated efforts" and "unavailability" of insurance. Findings of fact that are contrary to the undisputed evidence must be set aside. City of Houston v. Bullard, 354 S.W.2d 224 (Tex.Civ.App.), no writ

hist.; Swanson v. Swanson, 148 Tex. 600, 228 S.W.2d 156.

In addition to this consideration, we have here a clear and unambiguous provision to provide insurance in the deed of trust that the holder thereof has every legal right to have enforced and effectuated as it is written. Citizens Nat. Bank in Abilene v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003. "* * * If the provisions of a contract are clear and unambiguous, there is then nothing in the agreement that will require construction by a court. In such a case, arbitrary rules of construction may not be resorted to. On the contrary, the agreement should be performed as written, and the court will enforce it according to its expressed terms." 13 Tex.Jur.2d, p. 261, sec. 109. We believe it to be equally fundamental that when a deed of trust provides that insurance shall be maintained by the mortgagors, that a default in that respect provides the right of foreclosure. The failure to maintain insurance justifies foreclosure as fully as default in the installment payment obligation. Weierhauser v. Bennett, 19 S.W.2d 572 (Tex.Civ.App.), no writ hist. Difficulty or even impossibility of performance of an obligation of this nature will not excuse non-compliance. In Masterson v. Amarillo Oil Co., 253 S.W. 908 (Tex.Civ.App.), writ dismd., the severe financial depression throughout the country was given as the excuse for non-development of an oil and gas lease pursuant to its terms. The Court there stated, "It is presumed that a party will not assume an obligation which he is not able to perform. Whether such inability exists at the time of the execution of the contract or arises subsequently, unless there is a stipulation relieving the party under such circumstances from performance he is not excused." See also Powell v. State, 118 S.W.2d 960 (Tex.Civ.App.), writ ref.; Cleaver v. Drake-Brannum Const. Co., 195 S.W. 206 (Tex.Civ.App.), no writ.

Here the major part of Farm and Home's security has been undoubtedly de-

stroyed by fire. A very substantial portion remains, however, and there is no evidence in the record or finding by the court to the contrary. It cannot fairly be said that "nothing of insurable value remained after the fire" when the record, supported by the exhibits, clearly shows that the roof, rafters, walls, joists, beams of the bedrooms, the bathroom and its fixtures, the metal window frames and most of the exterior walls remained.

As long as the remainder continues uninsured, appellants stand to suffer further impairment, if not total destruction, of their security. This is the very thing that the continued-insurance covenant was designed to prevent. Even if the record gave support to the court's finding of unavailability of insurance, such unavailability of insurance coverage will not excuse default on the part of the mortgagor.

The second ground given in support of the court's restraining order is that "Appellees have not committed any acts of waste." The Rocco's covenant contained in the deed of trust in this respect is to keep the premises in as good order and condition as when received. Of course, the only waste that is under consideration is that occurring subsequent to the fire. The deed of trust requires that the mortgagors "not commit *or permit* any waste, impairment, or deterioration." (Emphasis added). The record is quite clear, and the majority opinion gives it emphasis, that in the intervening months following the fire the house has not been repaired, is open and exposed to vandals, is open and exposed to the elements, has been vandalized and is deteriorating.

Immediately after the fire, the Roccos cleaned out a part of the rubble and made some efforts at closing and protecting the fire damaged house. Thereafter, approximately six months elapsed during which time the efforts at closing the premises proved to be ineffective and the protective measures deteriorated and disappeared. There were acts of vandalism on the interior of the house and it was further depre-

ciated. The house was open and exposed, at least in part, to the elements.

The appellee testified that about three weeks before the hearing in the trial court he went to the house and made some efforts at closing and covering it. These efforts were not effective or successful and the house was neither closed nor covered the day before the hearing in the trial court. Prior to that, however, approximately *six months* had passed in which nothing was done by the Roccos. Mr. Rocco testified, "That's right. It's the first time we have been able to get back to the property." The trial court made no finding that the mortgagor has not *permitted* waste and no such finding could be justified on the basis of the record. The trial court only found that the plaintiffs had not *committed* any acts of waste. Failure to *prevent* waste has been held quite clearly to be a sufficient ground for foreclosure. A. R. Clark Investment Co. v. Green (Tex.Sup.Ct.), 375 S.W.2d 425.

The trial court's third and final stated basis for the injunction was the "Appellees have paid all monthly installment payments due and owing." It was stipulated that they did so until March 1, 1968. The payment of monthly principal and interest installments, however, clearly does not preclude foreclosure for the breach of other covenants. In A. R. Clark Investment Co. v. Green, supra, the Texas Supreme Court held, "This jurisdiction has never directly passed upon this question. However, we find that other jurisdictions in passing upon the question have almost uniformly held that the acceptance of installments due on a note is not a waiver of the right of acceleration when the right of acceleration arises out of some breach *other than* the failure to make an installment payment when due. * * * We adopt the view thus expressed."

Of incidental significance is the notice given to the Roccos by Farm and Home. Though not controlling of the issues here, it was as follows: On August 29, 1967, Farm and Home notified the mortgagors

that repairs on the home must be made. The Roccos made no response and made no repairs. On January 18, 1968, the Farm and Home notified the Roccos they were in default under the deed of trust and that the premises must be restored. The Roccos again gave no response and made no repairs. On February 28, 1968, Farm and Home still again notified the Roccos that the debt would be accelerated and that foreclosure would occur unless the Roccos either complied with their covenant obligations under the deed of trust or paid the debt. The Roccos again made no response and took no action of any nature. It was under these circumstances that the Trustee proceeded with posting for foreclosure, some *six months* after the date of the fire.

This is not a case where the mortgagee attempted to take advantage of some technical, temporary, or minor default. To the contrary, this situation had continued for six months before the loan was accelerated. This record will not support a finding of "no legal remedy" and "irreparable injury." If Farm and Home should foreclose, it would be obligated by the mortgage to apply the proceeds in reduction of the debt. If appellants *wrongfully* foreclosed, the Roccos would have an adequate remedy in damages. There was no showing or suggestion that Farm and Home was insolvent or unable to respond in damages. Accordingly, the injunction should not have issued. Stiles v. Stieren, 121 S. W.2d 391 (Tex.Civ.App., 1938 no writ).

In the case at bar we have only three enumerated reasons set forth in the court's order in support of it. These afford it no justification in fact or law. The court's findings of fact have no support in the testimony and in such instance must be set aside. City of Houston v. Bullard, supra. Where there is an erroneous application of the law to the facts the temporary injunction must be dissolved.

In Dallas General Drivers, etc. v. Wamix, Inc. of Dallas, 156 Tex. 408, 295 S. W.2d 873, our Supreme Court said, "We are aware, of course, that the issuance of a temporary injunction to preserve the status quo pending a final trial of a suit on its merits is largely discretionary with a trial judge and that his judgment will be reversed only where the issuance of the writ was a clear abuse of discretion. Texas Foundries, Inc. v. International M. & F. W. Union, 151 Tex. 239, 248 S.W.2d 460; Transport Co. of Texas v. Robertson Transports, Inc., 152 Tex. 551, 261 S.W.2d 549. On the other hand, it is equally well settled that a temporary injunction will be dissolved if it is based upon an erroneous application of the law to the facts. Southland Life Ins. Co. v. Egan, 126 Tex. 160, 86 S.W.2d 722."

It is respectfully submitted that the judgment of the trial court should be reversed and temporary injunction dissolved.